**Ethel West COTNAM, Petitioner,**
**v.**
**COMMISSIONER OF INTERNAL REVENUE, Respondent.**
**No. 16902.**

United States Court of Appeals
Fifth Circuit.

Jan. 23, 1959.

---

4. Smith's Transfer Corp. of Staunton, Va. v. Barksdale, 4 Cir., 1958, 259 F.2d 498.

Winston B. McCall, William S. Pritchard, Birmingham, Ala. (Victor H. Smith, Pritchard, McCall & Jones, Birmingham, Ala., of counsel), for petitioner.

James P. Turner, Melva M. Graney, Lee A. Jackson, Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., Charles P. Dugan, Special Atty., Int. Rev. Serv., Washington, D. C., Nelson P. Rose, Chief Counsel, Int. Rev. Serv., Washington, D. C., for respondent.

Before RIVES, BROWN and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

The tax snarls in this case are a result of a contract to make a will and the promisee's successful suit against the promisor's estate for breach of that contract.

In 1940 T. Shannon Hunter of Mobile, Alabama promised to give Mrs. Ethel Cotnam one-fifth of his estate, if she would serve him as an attendant or friend [1] for the rest of his life. Mrs. Cotnam quit her job at the Saenger Theatre, left her home in Springhill, moved to Mobile, and served T. Shannon Hunter faithfully as attendant and friend until he died four and a half years later. He died without a will. In 1948, after a long, hard-fought suit against the Administrator of the Estate of T. Shannon

---

1. Mrs. Cotnam's amended claim in the Alabama Circuit Court proceedings stated that she was "to render services and attention * * * as an attendant or friend".

Hunter, the Supreme Court of Alabama upheld the validity of Mrs. Cotnam's contract with Hunter and awarded her a judgment of $120,000.[2] Attorneys' fees were $50,365.83. The Commissioner of Internal Revenue determined a deficiency in income tax against Mrs. Cotnam of $36,985.02.

The Commissioner treated the $120,000 as taxable income and, in accordance with Section 107 of the Internal Revenue Code of 1939, apportioned the sum over the four and a half year period when Mrs. Cotnam served as Hunter's attendant. The Commissioner allowed a deduction for attorneys' fees for 1948.

The Tax Court upheld the Commissioner. 28 T.C. 947. The case is before us on the taxpayer's petition for review of the Tax Court decision.

(1) This Court is asked to decide whether the sum of $120,000 paid Mrs. Cotnam was exempt as a bequest or was taxable income for services rendered. (2) If the sum was income to Mrs. Cotnam, secondary questions arise as to the attorneys' fees: (a) Should the amount paid the attorneys from the judgment in favor of Mrs. Cotnam be excluded from the taxpayer's gross income, on the theory that it was not income to her? (b) If included in the taxpayer's income, should the attorneys' fees be apportioned ratably over the four and a half years Mrs. Cotnam served Hunter or should the entire amount be deducted as an expense in 1948, the year it was paid?

This Court is unanimously of the opinion that the amount Mrs. Cotnam received was taxable income to her. A majority of the Court hold that the sum paid the attorneys was not taxable income to Mrs. Cotnam.

## I.

Section 22(b) (3) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 22(b)

(3), provides that the value of property acquired "by gift, bequest, devise, or inheritance" shall be excluded from gross income. The taxpayer argues that under Alabama law the contract operated as a will, she assumed the status of a legatee, the amount she received was a bequest and exempt from federal income tax.

State law determines what property rights and interests a taxpayer has, but federal law determines the consequences of such rights and interests for tax purposes. The meaning of "gift, bequest, devise, or inheritance" in federal revenue laws is a matter of federal law. Lyeth v. Hoey, 1938, 305 U.S. 188, 59 S.Ct. 155, 158, 83 L.Ed. 119. In the Lyeth case the court held:

> "The question as to the construction of the exemption in the federal statute [section 22(b) (3)] is not determined by local law. * * * Congress establishes its own criteria and the state law may control only when the federal taxing act by express language or necessary implication makes its operation dependent upon state law. * * * There is no such expression or necessary implication in this instance."

The court was specifically concerned with the meaning of the term "inheritance", but also implied that a judgment *enforcing* a contract to make a will could in some cases operate as a bequest.

> "In exempting from the income tax the value of property acquired by 'bequest, devise, or inheritance', Congress used comprehensive terms embracing all acquisitions in the devolution of a decedent's estate. * * * [I]f in any appropriate proceeding, *instituted by him as heir*, he had recovered judgment for a part of the estate, that part would have been acquired by inheritance within the meaning of the act."

2. Two questions of fact were submitted to the jury: "(1) Whether such a contract as claimed was in fact made; and (2) Whether any part of the consideration of such contract was illicit sexual relations". The jury answered "Yes" to the first question and "No" to the second question. The Alabama Supreme Court held that the verdict was "well supported by the evidence". Merchants National Bank of Mobile v. Cotnam, 1948, 250 Ala. 316, 34 So.2d 122, 132.

■■ The nature of the transaction underlying the judgment, not the judgment itself, controls the tax effects. United States v. Safety Car Heating Co., 1936, 297 U.S. 88, 56 S.Ct. 353, 80 L.Ed. 500; Arcadia Refining Co. v. Commissioner, 5 Cir., 1941, 118 F.2d 1010. The amount received is taxable or nontaxable according to what it represents. If the judgment was for an amount due under a contract for personal services, a reference in the judgment or the opinion supporting it to the sum recovered as "in the nature of a bequest" will not change the compensation from taxable income to an exempt bequest. Thus, in order to acquire property by inheritance, a party must bring suit against the estate as an heir. He must participate in the proceeds as an heir. One seeking to acquire property by bequest stands on the same side of the fence. He must sue as a legatee.

■ A contract to make a will giving one-fifth of the promisor's estate in consideration of the promisee's personal services is a contract, not a will. It is supported by consideration. It is irrevocable, except by mutual consent. Liability arises from its breach. A will is revocable, ambulatory, the antithesis of a contract in fundamental respects. "If the contract is thought of as a contract to pass property at death, and the will thought of as a vehicle for passing the property, much of the confusion and conflicts would disappear. The contract, not the will, gives the promisee a right to the property, and when litigation arises, it is the contract that must always be established. Once the contractual right is established the interests of the promisee are protected whether or not a will has been executed." Sparks, Contracts to Make Wills (N.Y.U.1956), p. 112.

When Hunter died without a will Mrs. Cotnam's only remedy was by an action on the contract. The relief available depends upon principles of contract law, and the fact that the consideration moving from the promisor was the making of a will does not distinguish it from any other contract where a promisee has to do something or give something. The substance of the Hunter-Cotnam transaction was Hunter's agreement to give one-fifth of his property to Mrs. Cotnam on his death for her services. The Alabama Supreme Court enforced a contract, not a non-existent will.

The pleadings in the Alabama proceedings show clearly that Mrs. Cotnam's claim was based on the theory of a contract for services. The original claim in the probate court of Mobile County stated: "Estate of T. Shannon Hunter, deceased, In account with Ethel W. Cotnam. Amount owing and due to Ethel W. Cotnam under an agreement between T. Shannon Hunter and Ethel W. Cotnam, by which she was to receive and be paid a sum equal to one-fifth (⅕) of the value of his estate, *which agreement has been fully performed on her part,* and for services rendered—$175,000.00." The amended claim before the Circuit Court, where the case was tried de novo, is to the same effect.[3] The Alabama Supreme

---

3. "Comes Ethel W. Cotnam and amends the claim heretofore filed in this Court against the Estate of T. Shannon Hunter, deceased, so that the same shall read as follows: 'Amount owing and due by the Estate of T. Shannon Hunter to Ethel W. Cotnam, under a verbal agreement between her and T. Shannon Hunter made during the month of June, 1940, by which she agreed to give up her position and cease working at the Saenger Theatre in the City of Mobile, where she was then and there gainfully employed, and to move from Springhill, Alabama, into an apartment or residence in the city of Mobile, and thereafter to render services and attention to the said T. Shannon Hunter during his remaining lifetime as an attendant or friend, in consideration of which the said T. Shannon Hunter agreed to make a will by the terms of which she would at his death, be bequeathed by him or receive from his Estate thereunder a sum equal to one-fifth (⅕) of the value of the Estate of the said T. Shannon Hunter, deceased, at the time of his death, which agreement and services were duly performed on her part, and which agreement was not performed on the part of the said T. Shannon Hunter—$175,000.00.' "

Court held that "agreements of this kind * * * are binding * * * Such a right being contractual, is not affected by a will or its probate". Merchants National Bank of Mobile v. Cotnam, 1948, 250 Ala. 316, 34 So.2d 122, 126.

The legal proceedings against Hunter's estate were instituted under Title 61, section 216 of the Code of Alabama 1940.[4] A proceeding under this section "[is] not intended to lead to a personal judgment, but * * * is in the nature of a declaratory judgment to determine the validity of the claim which has been filed against the estate". Merchants National Bank v. Cotnam. The Alabama court pointed out however that the parties and the court tried the case in the circuit court on appeal, "as if it were a common law action begun as such. To that extent it did not conform to section 216" of Title 61 of the Alabama Code. The Supreme Court of Alabama said that in addition to relief under the Code, "[a] claim for damages for the breach of a contract is also an alternative remedy available to her, * * * and an account for services rendered on a quantum meruit * * * [W]e see no reason why the parties cannot with the consent of the court convert it into such an action and have a personal judgment accordingly rendered".

In Blease v. Commissioner, 1929, 16 B.T.A. 972, on similar facts, the court held that money recovered in a judgment against an estate was taxable income, not a bequest. "Complainant [the taxpayer] proceeded at law and sought and recovered only a money judgment which gave to her a claim as we believe, superior to that of any legatee or devisee * * * We are clearly of the opinion that complainant participated in the estate of testator as a creditor and not as a legatee and that the amount recovered by her was compensation for services rendered."

In Davies v. Commissioner, 1954, 23 T.C. 524, the taxpayer was a nurse, secretary, and bookkeeper for a doctor who had promised to provide for her in his will. He died intestate. She filed a claim in the probate court. When the jury could not reach a verdict, the claim was compromised for $8,500. The court held: "Actually, Gertrude did not receive the $8,500 or any part of it by bequest, devise, or inheritance from Tivnen. She did not receive anything by inheritance from him because she was not related to him in any way and claimed no relationship, and she did not receive anything by bequest or devise because he left no will." The reasoning applies with equal vigor here.

---

4. 61 Code of Alabama (1940):

"§ 216. When claim disputed either party may demand hearing.—The personal representative of the estate of a decedent may give notice in writing to the claimant, or anyone having a beneficial interest in a claim against the estate, that such claim is disputed in whole or in part, if in part specifying the part disputed; thereupon the judge of the court having jurisdiction of the administration of the estate shall, on written application of either the personal representative or the claimant, hear and pass on the validity of such claim, or part thereof, first giving ten days' notice of such hearing to the interested parties. If the claimant in such proceeding shall fail to recover upon the disputed part of such claim, he shall be taxed with the costs thereof. This section shall not apply to claims against estates declared insolvent. If the judgment on any such claim is rendered by a probate court, either party may within thirty days after rendition of such judgment appeal to the circuit court of the county in which the administration of said estate is pending, and the trial of the validity of said claim in said circuit court shall be de novo and upon demand, of either party, filed in the circuit court within thirty days from the taking of said appeal shall be tried by a jury. If the administration of an estate in which a claim is disputed is pending in the circuit court, or court of similar jurisdiction, the trial of the validity of said claim shall be by jury upon demand of either party filed within thirty days after written notice that the claim is disputed. In any event either party may appeal to the supreme court or court of appeals, as the case may be, from the judgment of the circuit court or court of similar jurisdiction, such appeal to be taken within thirty days, and as other appeals are taken."

■ The taxpayer's confidence in Cox v. Hutto, 1927, 216 Ala. 232, 113 So. 40, 42, is misplaced. The court did say:

"[4, 5] The bill presents a proper case for relief in the nature of specific performance. The heirs succeed to and hold the legal title to the lands in trust for the complainants. Complainants are entitled to have this title divested and vested in themselves and their status as devisees and legatees adjudicated as if a will had been made according to contract. * * * [6] The contract having operation as a will, passing all the property owned at the time of decedent's death, the general description of the personal estate is sufficient. No inventory was required."

The court reached its decision, however, by applying ordinary principles of contract; for example:

"[2, 3] The instrument is a contract to execute a will, operative upon the property owned at the death of testators, rather than a deed to specific property. It is supported by a valuable consideration. * * * In no event could that statute be construed to impair the obligation of contracts existing at the time it became effective."

In Cox v. Hutto, as in similar cases of suits for specific performance, the court enforced the contract. When the promisor fails to perform, equity uses a constructive trust to accomplish performances of the contract; the title a personal representative takes from the intestate promisor is subject to the constructive trust. But only in a rhetorical sense can it be said that the successful litigant in a suit to enforce a contract is the legatee of a will that was never written.

■ Section 22(a) adds salt to the taxpayer's wound. It provides that gross income shall include "compensation for personal service, * * * *in whatever form paid*". Labelling something a bequest will not result in a tax exemption.

Bank of New York v. Helvering, 2 Cir., 1943, 132 F.2d 773.

■ There is no difference between a contract to compensate for one's personal service in the form of a bequest, and one in which the contractor agrees to pay for the services during his life. Ex parte Simons, 1918, 247 U.S. 231, 38 S.Ct. 497, 62 L.Ed. 1094. The law does not stop at the form of a transaction, it goes to its substance. Thus, income received is taxable or nontaxable according to what it represents. Hort v. Commissioner, 1941, 313 U.S. 28, 61 S.Ct. 757, 85 L.Ed. 1168. Here the amount of the judgment represented payment under a contract for personal services.

■ As we read the law, property is acquired by bequest, within the meaning of the Code, only when actual service is not required as a condition of payment of the legacy. United States v. Merriam, 1923, 263 U.S. 179, 44 S.Ct. 69, 70, 68 L.Ed. 240. The Merriam case involved the taxability of bequests to executors.

The principle set out is equally applicable here:

"[The term] does include the bequest here under consideration since, as we shall presently show, actual service as a condition of payment is not required. * * *

" * * * * The distinction to be drawn is between compensation fixed by will for services to be rendered by the executor and a legacy to one upon the implied condition that he shall [merely] clothe himself with the character of executor. In the former case he must perform the service to earn the compensation. * * *

"The word 'bequest' having the judicially settled meaning which we have stated, we must presume it was used in that sense by Congress."

The rule of the Merriam case is well established. Bank of New York v. Helvering, 2 Cir., 1943, 132 F.2d 773; Rose v. Grant, 5 Cir., 1930, 39 F.2d 338. "If services have been performed by the recipients, it may well be said the presump-

tion is that the payment is for the services and not a gift." Wallace v. Commissioner, 5 Cir., 1955, 219 F.2d 855, 857.

■ Ethel Cotnam had to carry out her part of the contract to get paid. She had to render service to Hunter. Payment was conditioned on this. She could not acquire the $120,000 by "bequest" as the term is used in the Code. She could and did acquire it because her contract gave it to her for personal services rendered. Accordingly, the judgment in Mrs. Cotnam's favor was correctly taxed as income for personal service "in whatever form paid".

## II.

■ A majority of the Court, Judges Rives and Brown, hold that the $50,365.83 paid Mrs. Cotnam's attorneys should not be included in her gross income. This sum was income to the attorneys but not to Mrs. Cotnam.

The Alabama Code provides: "The attorneys at law shall have the same right and power over said suits, judgments and decrees, to enforce their liens, as their clients had or may have for the amount due thereon to them".[5] In construing this statute the Alabama courts have given full effect to the statute. Attorneys have the same rights as their clients. Western Railway Co. v. Foshee, 1913, 183 Ala. 182, 62 So. 500; Denson v. Alabama Fuel & Iron Co., 1916, 198 Ala. 383, 73 So. 525. Under Alabama law, therefore, Mrs. Cotnam could never have received the $50,365.83, even if she had settled the case directly with the Bank.

In United States Fidelity & Guaranty Co. v. Levy, 5 Cir., 1935, 77 F.2d 972, 975, Judge Hutcheson, speaking for the Court, held that the Alabama statute creates a charge "in the nature of an equitable assignment * * * [or]

equitable lien" in the cause of action. An attorney "holding such an interest has an equity in the cause of action and the recovery under it prior to that of the defendant in the judgment to exercise a right of set-off accruing to him after the attorney's interest had attached."

The facts in this unusual case, taken with the Alabama statute, put the taxpayer in a position where she did not realize income as to her attorneys' interests of 40% in her cause of action and judgment.

Judges RIVES and BROWN add to the foregoing, the following:

When Mr. Hunter died without a will and his Administrator declined to recognize Mrs. Cotnam's claim that he had made a verbal contract to leave her one fifth of his estate, she was a long way from having the equivalent of cash. Her claim had no fair market value, and it was doubtful and uncertain as to whether it had any value. The only economic benefit she could then derive from her claim was to use a part of it in helping her to collect the remainder. Accordingly she, in effect, assigned to her attorneys forty per cent of the claim in order that she might collect the remaining sixty per cent. That was not the assignment of income of Mrs. Cotnam within the doctrine of Lucas v. Earl, 1930, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731. Mrs. Cotnam's services had been performed before Mr. Hunter's death, and for those services she had earned a claim which was worthless without the aid of skillful attorneys. At the time that she entered into the contingent fee contract, she had realized no income from the claim, and the only use she could make of it was to transfer a part so that she might have some hope of ultimately enjoying the remainder.

---

5. 46 Code of Alabama (1940):

"§ 64. Lien of attorneys at law.—
* * * * * * *
"2. Upon suits, judgments, and decrees for money, they shall have a lien superior to all liens but tax liens, and no person shall be at liberty to satisfy said suit, judgment or decree, until the lien or claim of the attorney for his fees is fully satisfied; and attorneys at law shall have the same right and power over said suits, judgments and decrees, to enforce their liens, as their clients had or may have for the amount due thereon to them."

By such limited use she has not "fully enjoyed the benefit of his (her) economic gain represented by his (her) right to receive income" within the doctrine of Helvering v. Horst, 1940, 311 U.S. 112, 61 S.Ct. 144, 147, 85 L.Ed. 75, and Helvering v. Eubank, 1940, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81. That doctrine can have no just or realistic application to a case like this, where the only economic benefit to the taxpayer was as an aid to the collection of a part of an otherwise worthless claim.

The services of her attorneys resulted in converting that claim into a judgment and the collection of the judgment. The amount of the contingent fee was earned, and well earned, by the attorneys.

True, in a remote rather than a proximate sense, the entire amount of the judgment had also been earned by Mrs. Cotnam, but she could never have collected anything or have enjoyed any economic benefit unless she had employed attorneys, and to do so, she had to part with forty per cent of her claim long before the realization of any income from it. The only income, the only real economic benefit, which Mrs. Cotnam ever received was the $75,254.17 which she collected. (In our opinion, it is as illegal as it is unjust to tax her on the remaining $50,365.83 which did not pass through her hands and of which she never had control.) In a realistic sense the remaining $50,365.83 was income of the attorneys, not of Mrs. Cotnam.

The Commissioner makes a further argument in brief:

"*  *  * Moreover, payment of the attorneys' fees was a legal obligation taxpayer herself had incurred. Regardless of the mechanics of their payment, the discharge of that legal obligation out of a judgment based on services she had performed was 'equivalent to receipt' by taxpayer of the amount of the attorneys' fees. Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 729 [49 S.Ct. 499, 73 L.Ed. 918]."

That argument seems to us to be based on the false premise that Mrs. Cotnam obligated herself to pay the attorneys' fee. She did not. Their fee was contingent upon success, and was fully paid by the assignment of a portion of a doubtful claim. Mrs. Cotnam's tree (Lucas v. Earl, supra) had borne no fruit and would have been barren if she had not transferred a part interest in that tree to her attorneys, who then rendered the services necessary to bring forth the fruit.

Accordingly, the attorneys' fee of $50,365.83 should not have been included in the taxpayer's gross income.

The judgment is affirmed in part and reversed in part.

WISDOM, Circuit Judge (dissenting).

The fates and the tax collector, a formidable combination, have cut so deeply into the award for Mrs. Cotnam's services that it is with some regret I feel constrained to dissent from the holding that the amount paid as attorneys' fees is excluded from the taxpayer's gross income.

Mrs. Cotnam sued the Hunter Estate and recovered on the theory that she had a contract for compensation for services rendered. Thus, at the time of the assignment to the attorneys all of her services had been rendered and all of the income earned. It seems to me that this case is governed by the principles set forth in Helvering v. Horst, 1940, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, and Helvering v. Eubank, 1940, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81. In Horst, the donor transferred interest coupons detached from bonds delivered to the donee and later paid at maturity. The court held that whether the assignment preceded the rendition of services, as in Lucas v. Earl, 1930, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731, or came after, "the exercise of the power of disposition of the interest or compensation *  *  * is the enjoyment by the donor of income derived from them". [311 U.S. 112, 61 S.Ct. 148]. Mr. Justice Stone, for the majority stated:

"*  *  * the rule that income is not taxable until realized has never

been taken to mean that the taxpayer, even on the cash receipts basis, who has fully enjoyed the benefit of the economic gain represented by his right to receive income, can escape taxation because he has not himself received payment of it from his obligor. * * * [Taxation] may occur when he has made such use or disposition of his power to receive or control the income as to procure in its place other satisfactions which are of economic worth. The question here is, whether because one who in fact receives payment for services or interest payments is taxable only on his receipt of the payments, he can escape all tax by giving away his right to income in advance of payment. * * * Nor is it perceived that there is any adequate basis for distinguishing between the gift of interest coupons here and a gift of salary * * * [T]he import of the statute is that the fruit is not to be attributed to a different tree from that on which it grew."

This case is stronger than Horst or Eubank, since Mrs. Cotnam assigned the right to income already earned. She controlled the disposition of the entire amount and diverted part of the payment from herself to the attorneys. By virtue of the assignment Mrs. Cotnam enjoyed the economic benefit of being able to fight her case through the courts and discharged her obligation to her attorneys (in itself equivalent to receipt of income, under Old Colony Trust Co. v. Commissioner, 1929, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918.)

The taxpayer contends that the deduction for attorneys' fees should have been prorated over the four and a half

year period in which the income was prorated. Section 107 permits the carry back computation of *gross* income, not *net* income.[1] It refers specifically to "compensation for personal services". Section 107 has no mention of net compensation and no provision for proration of expenses incurred in collecting the compensation. Attorneys' fees therefore may be deducted only in the year the fees were paid, 1954. Smith v. Commissioner, 1951, 17 T.C. 135, rev'd on other grounds, 2 Cir., 1952, 203 F.2d 310.

---

1. Sec. 107(a): "Personal services. If at least 80 per centum of the total compensation for personal services covering a period of thirty-six calendar months or more (from the beginning to the completion of such services) is received or accrued in one taxable year by an individual or a partnership, the tax attributable to any part thereof which is included in the gross income of any individual shall not be greater than the aggregate of the taxes attributable to such part had it been included in the gross income of such individual ratably over that part of the period which precedes the date of such receipt or accrual." 26 U.S.C.A., 1952, ed., Section 22.