Paul L. BATH and Mary M. Bath,
Plaintiffs-Appellees,

v.

UNITED STATES of America,
Defendant-Appellant.

No. 73-1384

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

June 25, 1973.

Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Atty., Tax Div., Dept. of Justice, Washington, D. C., Lynn Ross, Jr., Tax Div., Dept. of Justice, Dallas, Tex., Roby Hadden, U. S. Atty., Tyler, Tex., Lee H. Henkel, Jr., Chief Counsel, IRS, Washington, D. C., for defendant-appellant.

Jack N. Price, Longview, Tex., for plaintiffs-appellees.

Before WISDOM, AINSWORTH and CLARK, Circuit Judges.

WISDOM, Circuit Judge:

The payment to the taxpayer that is the subject matter of this action is a square peg that will not fit into any neat, round tax hole. The issue in this

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York, et al., 5 Cir. 1970, 431 F.2d 409, Part I.

case is whether a payment received by a taxpayer from his mother's estate was a tax-free bequest or taxable compensation for services performed during his mother's life. The difficulty in the case arises from the fact that the payment has some of the characteristics of a bequest and some of the characteristics of a settlement of a claim for services rendered. At the same time the payment is antithetical to both a bequest and to compensation for services rendered. In the district court a jury concluded that the payment was a bequest. The United States has appealed the denial of its motions for directed verdict and for judgment notwithstanding the verdict. We conclude that because there was a conflict in substantial evidence as to the nature of the payment the district court correctly denied the motions by the United States. The holding should not be extended beyond the peculiar facts of this case.

## I.

Paul Bath, the taxpayer, is the brother of Tisbey Bath and Blossom Bath Grossblatt, and is the son of Gertrude Bath. Gertrude Bath died in 1966. She left a will written in 1960 devising one-third of her estate outright to Tisbey Bath and two-thirds to Tisbey Bath in trust, one-third for the benefit of Paul and one-third for the benefit of Blossom. Paul and Blossom were to receive the income during their lives with the remainder going to their children. Paul Bath unsuccessfully attacked the validity of the will on the basis that his mother was incompetent and was under the influence of Tisbey. Having failed with those theories, he then asserted that he and his mother had entered into a contract for services in 1946 whereby she agreed to will him a full one-third interest in her estate in return for his managing her business. Paul in fact performed those services for her from 1933 until 1957, except for a four year period during World War II. Paul alleged that in 1946, at the time of this contract, his mother drafted a will devis-

ing one-third of her property outright to him. The 1960 will omitted that provision.

Paul prevailed in his attack upon the will by what appears to be, in light of all the evidence, a settlement. More precisely, the executor, Tisbey, tacitly waived opposition. Paul testified in the probate court as to his alleged contract with his mother. He was not cross-examined, nor was the 1946 will, allegedly supportive of their contract, introduced into evidence. The attorney for Tisbey did not raise the "dead man statute" which prevents heirs from testifying about transactions with a deceased. Vernon's Ann.Tex.Civil Rev.Stat., Art. 3716. Moreover, that attorney testified that he had agreed not to appeal the state trial court's ruling. At the conclusion of a brief probate hearing, a judgment was immediately presented to the judge for his signature.

It seems clear that Tisbey could have presented substantial defenses to the claim by Paul. Indeed, in a lengthy letter to the attorney for the children, Tisbey catalogued the defenses he might have interposed. He chose not to do so. In the district court, Paul testified, and Tisbey agreed, that at the time of Gertrude Bath's death there were *no* uncompensated services outstanding; Paul had been paid a salary as he had performed the work for his mother. Paul stated that he attacked the trust feature of the will because he feared arbitrary treatment by Tisbey. Paul testified that Tisbey had warned him: "If you do just exactly like I tell you, and Blossom does, I will give you a little of it." Paul also testified that he had great difficulty in receiving any benefits from another trust that Gertrude Bath had created for his benefit during her life, with Tisbey as trustee. Paul was apprehensive about future altercations with Tisbey. Indeed, when Paul first began his attack upon the will, Tisbey moved to have Paul declared insane and requested that a guardian be appointed for him.

Though Tisbey testified that the judgment was not the result of a settlement,

Paul stated that it was, and that the simulation of adversary litigation was necessary because of Tisbey's duty as executor to defend the provisions of the will naming Paul's children as remaindermen.

Further evidence of an understanding between the parties is that Paul was charged with a portion of the estate taxes and expenses of the administration of the estate, and paid one-third of the estate's attorneys' fees.[1]

## II.

In Lyeth v. Hoey, 1938, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119, the Supreme Court held that where an heir successfully challenged a will for lack of testamentary capacity, a payment received as the result of a settlement was nontaxable as inheritance. Later, this Court in Cotnam v. Commissioner of Internal Revenue, 5 Cir., 1959, 263 F.2d 119, held that where a personal attendant successfully enforced a contract for services against the estate of her employer, the payment was taxable as compensation. These cases are instructive but not conclusive.

In Cotnam the plaintiff had faithfully served as an attendant to the decedent for the last four years of his life in exchange for his promise to will her one-fifth of his estate. When her employer died without a will, the plaintiff engaged in a "long, hard-fought suit against the Administrator of the Estate," which eventually reached the Supreme Court of Alabama. In concluding that this payment to her was taxable as compensation we stated: "The nature of the transaction underlying the judgment, not the judgment itself, controls the tax effects. . . . The amount received is taxable or nontaxable according to what it represents. . . . Thus in order to acquire property by inheritance, a party must bring suit against the estate as an heir." Cotnam,

263 F.2d at 122. "The law does not stop at the form of a transaction, it goes to its substance. Thus, income received is taxable or nontaxable according to what it represents." Id. at 124.

In Cotnam the singular reason for the plaintiff having received a payment from the estate was because of the services she had performed, and in Lyeth the singular reason for the compromise was because of the plaintiff's status as an heir. There was no suggestion that anything less than a bona fide claim was made in either case. In contrast, it is not possible from the substance of this transaction to say that Paul received a payment from the estate solely because of the services he performed or that he was in good faith asserting a claim for uncompensated services.

Both Paul and Tisbey testified that no compensation was due to Paul at the time of his mother's death, because he had received a salary as he had performed the services during her life. Moreover, in contrast to the extensive litigation in Cotnam, here Tisbey did not assert any of the available, and perhaps meritorious, defenses which he could have presented against Paul's suit. The true "nature of the transaction underlying the judgment" was neither bequest nor inheritance, but was Tisbey's acquiescence in Paul's colorable claim. Paul's actual motivation in seeking to receive his interest free of trust was not to receive a payment justly owed to him, but was to reduce the opportunity for future conflict between him and Tisbey. There was convincing evidence of past animosity between the brothers which gave weight to Paul's fears of Tisbey acting arbitrarily in his capacity as trustee. Tisbey, apparently, wanted to put an end to unseemly family strife.

Paul and his family did not eventually receive any more than they were granted by the will, though they did receive it free of the division between life and re-

---

1. The judgment of the state court provided that Paul would receive one-third of the estate "after all debts, taxes, costs, at-torneys' fees and expenses of administration have been fully paid . . . ."

mainder interests. It might be said, therefore, that he received at least the value of a life interest in one-third of the estate by tax free inheritance. The government, however, asserts a tax on the full amount of the claim. Moreover, Paul shared equally as an heir in the expenses of the estate.

■ As stated in *Cotnam*, "the amount received is taxable or nontaxable according to what it represents." We reassert this principle. The tax treatment of proceeds from a will contest must reflect the character of the claim upon which a judgment or settlement is based. Here Paul's claim was insubstantial by his own admission, and there is a strong likelihood that it might have failed had a genuine opposition been presented. Certainly the tax effect of a judgment or settlement based upon a bona fide claim will be determined by the character of the claim made. But, in the light of the absence of true adversary litigation, the total waiver of substantial defenses, and an admission by the parties that the compensation claimed had already been paid, it is not possible to determine conclusively the nature of this payment solely by the character of the claim. Nor does a label applied in a state court judgment conclusively determine what a payment "represents." Characterization as bequest or compensation is to be determined by federal law, not local characterization.

*Lyeth,* 305 U.S. 193, 59 S.Ct. 155, 83 L. Ed. 119. Even where federal tax liability turns upon local characterization, federal authorities are not bound by determinations by a state trial court. Commissioner of Internal Revenue v. Bosch, 1967, 387 U.S. 456, 87 S.Ct. 1776, 18 L. Ed.2d 886. Especially suspect are characterizations, such as we have here, not the result of bona fide adversary proceedings. *See Bosch,* 387 U.S. at 462, 87 S.Ct. 1776.[2]

### III.

■ To be entitled to a directed verdict or a judgment notwithstanding the verdict, "the facts and inferences [must] point so strongly and overwhelmingly in favor of one party that . . . reasonable men could not arrive at a contrary verdict. . . ." Boeing v. Shipman, 5 Cir. 1969, 411 F. 2d 365, 374. Granting either of these motions is improper where there is a "conflict in substantial evidence," that is, where there is "evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions. . . ." *Boeing,* 411 F. 2d at 374. Because of the conflict in substantial evidence as to the nature of this payment we conclude that a jury issue was created and that the government's motions were properly denied.[3]

Affirmed.

2. Justice Douglas, dissenting in *Bosch*, stated: "A federal court might not be bound by a consent decree, for it does not propose to be a declaration of state law; it may be merely a judicial stamp placed upon the parties' contractual settlement. Nor need the federal court defer to a state court decree obtained by fraud or collusion." *Bosch,* 387 U.S. at 470–471, 87 S.Ct. at 1785.

3. Since the taxpayer herein and the estate treated the payment to the taxpayer in inconsistent manners on their respective tax returns (i. e., taxpayer maintained that the payment was a tax-free bequest, while the executor reported the payment as a deductible claim against the estate), the Commissioner assessed deficiencies against both taxpayers in order to protect the revenue. The estate tax deficiency is presently the subject of litigation in the Tax Court. The Government's brief states that should the judgment below ultimately be reversed, the Government will concede that no deficiency exists against the estate with respect to this issue.