**[PUBLISH]**

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**APR 30, 2001**
**THOMAS K. KAHN**
**CLERK**

_____

No. 00-11916

_____

D. C. Docket No. 99-01838-CV-J-S

MATTIE FOSTER,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Northern District of Alabama

_____

(April 30, 2001)

Before BIRCH and BLACK, Circuit Judges and NESBITT*, District Judge.**

_____
\* Honorable Lenore C. Nesbitt, U.S. District Judge for the Southern District of Florida, sitting
by designation.
\*\* Judge Nesbitt did not participate in this decision.  This decision is rendered by a quorum.
28 U.S.C. § 46(d).

BIRCH, Circuit Judge:

In this tax appeal, we review whether punitive damages are taxable income, whether fees paid to attorneys based on a post-judgment, pre-appeal fee agreement must be included in gross income, and whether the position of the Internal Revenue Service ("IRS") in this litigation was substantially justified. The district court found that punitive damages were taxable income, that the portion of post-judgment interest paid to the taxpayer's attorneys constituted taxable income as it was not part of the original pre-trial contingency fee agreement, and that the position of the IRS in this litigation was substantially justified. We AFFIRM as to the punitive damages, REVERSE as to the post-judgment interest and the finding that the IRS's position was substantially justified, and REMAND to the district court for a final computation of overpayment plus interest and litigation costs due to Foster.

## I. BACKGROUND

This case was decided on summary judgment, and the facts are undisputed. See Foster v. United States, 106 F.Supp.2d 1234 (N.D.Al. 2000). Plaintiff-Appellant Mattie Foster won a jury verdict in Alabama state court for $50,000 in compensatory damages,[1] $1 million in punitive damages, and, by the time she was

_____

[1] Of the $50,000 compensatory award, Foster received $95 in damages for a disallowed claim for medical expenses under her insurance policy, $2,468.60 for premiums paid for the

2

paid, $156,032.80 in post-judgment interest.[2]  Before the original complaint was filed, Foster signed a contingency fee agreement with her lawyers, guaranteeing them 50% of all money awarded.  After the trial, but before the appeal, they entered into a new agreement, and Foster offered her lawyers all of the post-judgment interest, rather than just the original 50%, if they continued to represent her through the appeal.  Of the $1,206,032.80 eventually paid by the original state court defendants in 1994, Foster received $525,000,[3] and the remainder was paid to her lawyers.   Foster did not declare any of her share of the judgment on her federal income tax return.

In 1997, the IRS assessed a tax deficiency against Foster for 1994.  After she failed to pay, the IRS levied her annuity policy for taxes owed on the full award amount, including that which went to her attorneys, allowing an itemized deduction for attorneys' fees and costs.  After Foster filed for a tax refund and was denied, she filed suit in district court.  On a motion for summary judgment, the district court found in part for the United States and in part for Foster.  The district court decided that Foster should have included $500,000 from punitive damages

_____

policy, and $47,436.40 for emotional distress and mental anguish.

[2]This is the amount awarded to Foster after a series of appeals in the state court system.

[3]She received half of the compensatory damages ($25,000) and half of the punitive damages ($500,000).  The lawyers received all of the interest as payment for the appeal.

3

and $78,016.40 from the post-judgment interest in her gross income, thereby subjecting it to income taxes. The court also held that she was entitled to a miscellaneous itemized deduction of $74,781.98 for her attorneys' fees. Finally, the court upheld the penalty assessed for failure to pay under 26 U.S.C. § 6651(a)(3) (2000). The result of this finding was that the United States owed Foster $168,784.05 plus $29,943.94 in interest.

Foster appeals, claiming that she should not have to pay taxes on the punitive damages under 26 U.S.C. § 104(a)(2) (1994), that she should not have to pay taxes on the post-judgment interest paid to her lawyers for their work on the appeal under Cotman v. Commissioner, 263 F.2d 119 (5th Cir. 1959), that she should not have to pay the penalty assessed for failure to pay, and that she is entitled to litigation costs under 26 U.S.C. § 7430 (2000).[4]

## II. DISCUSSION

We review the grant of a motion for summary judgment de novo, viewing the facts in the light most favorable to the non-moving party. Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1454 (11th Cir. 1998). We review the district

---

[4]Foster also argues that the $20,053.90 that her lawyers collected from the judgment for costs should be tax deductible expenses. We reject this argument, however, because it appears from the record that this money did not come from Foster's share of the judgment; she still received half of the compensatory and half of the punitive damages as outlined in the two fee agreements.

court's denial of taxpayer's request for an award of attorneys' fees under § 7430 for abuse of discretion.  Rasbury v. Internal Revenue Serv., 24 F.3d 159, 166 (11th Cir. 1994).

A.  Taxation of Punitive Damages

Foster argues that the full $1 million punitive damages award should be withheld from her gross income under § 104(a)(2).[5]  The district court agreed with Foster as to the $500,000 paid directly to her attorneys per the contingency fee agreement.  However, the district court held that the $500,000 in punitive damages that Foster received was taxable.

Foster relies on the 1989 amendment to § 104, which states, "Paragraph (2) shall not apply to any punitive damages in connection with a case not involving physical injury or physical sickness."  26 U.S.C. § 104(a).[6]  Foster contends that, if the double negative is removed from the sentence, it states that the exclusion allowed by paragraph 2 shall apply to any punitive damages in connection with a case involving physical injuries or physical sickness.  Foster cites United States v. Burke, 504 U.S. 229, 112 S.Ct. 1867 (1992) to support her interpretation of §

---

[5]"[G]ross income does not include . . . the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness." 26 U.S.C. § 104(a)(2).

[6]In August of 1996, Congress amended this section again, and removed the language added in 1989. 26 U.S.C. § 104(a) (1997).

104(a).  In Burke, the Supreme Court stated that, in 1989, "Congress amended §

104(a) to allow the exclusion of punitive damages only in cases involving

'physical injury or sickness.'" Id. at 235 n. 6, 112 S.Ct. at 1871 n. 6.

A later Supreme Court opinion forecloses this interpretation of § 104(a). See

O'Gilvie v. United States, 519 U.S. 79, 117 S.Ct. 452 (1996).  In O'Gilvie, the

Supreme Court held that punitive damages are included as gross income for tax

purposes.  Though the Court was examining § 104 before the 1989 amendment that

added the exception, the opinion discusses the 1989 amendment.  According to the

Supreme Court, "Congress's primary focus [in enacting the amendment] was upon

what to do about nonphysical personal injuries, not upon the provision's coverage

of punitive damages under pre-existing law." Id. at 90, 117 S.Ct. at 458.  The Court

states that the law at the time was uncertain, but based on the legislative history, it

is certain that punitive damages were not meant to be exempt from income tax.  In

addressing Burke, the Court said that it "includ[ed] a passing reference to the 1989

amendment, in dicta, as support for a view somewhat like that of the petitioners."

Id.  By referring to the Burke footnote as dicta and reducing its significance to a

"But cf." cite, the Court clarified the law and established that punitive damages are

not excludable from gross income. See Fabry v. Comm'r, 223 F.3d 1261, 1265 n.

6

14 (11th Cir. 2000) ("In O'Gilvie . . . the Court found that punitive damages were not excludable under IRC § 104(a)(2).").

Foster argues that she should not be assessed the penalty for failure to pay under § 6651 because she had reasonable cause not to pay, namely, that the law at that time did not require her to pay taxes on her punitive damages. While Foster's argument is an accurate portrayal of the federal tax law as it stood in 1994, the penalty was assessed for her failure to pay in 1997 when the deficiency was asserted, not for her failure to pay in 1994. At that time, Foster's argument had been foreclosed by the Supreme Court's 1996 holding in O'Gilvie. She therefore should have paid the taxes on her punitive damages when the deficiency was asserted in 1997. Furthermore, the amendment that supports her claim refers only to physical injuries and physical sickness. The evidence in this case suggests that Foster received compensatory damages for emotional distress, which is not considered a physical injury under Alabama law. The case that Foster uses to suggest that mental anguish is a physical injury in Alabama, Alfa Mutual Ins. Co., Inc. v. Morrison, 613 So.2d 381, 382 (Ala. 1993), is an insurance case dealing directly with how the term "bodily injury" is defined in a specific insurance contract, and not a general statement that emotional distress is a bodily injury. Id. Therefore, this argument fails.

B. <u>Taxation of Post-Judgment Interest</u>

After the jury verdict, but before an appeal was filed, Foster negotiated with her attorneys that, if they represented her on appeal, they could take all of the post-judgment interest, if any, rather than just the half they were entitled to based on the pre-trial contingency fee agreement. The district court held that Foster should have included half of the post-judgment interest on her tax return, despite the fact that the entire interest amount was paid directly to her lawyers.

The district court relied on <u>Lucas v. Earl</u>, 281 U.S. 111, 50 S.Ct. 241 (1930) and <u>Helvering v. Horst</u>, 311 U.S. 112, 61 S.Ct. 144 (1940) to deny Foster's claim. In <u>Lucas</u>, the Supreme Court held that a man who contracted with his wife to give her half of everything he earned could not avoid paying taxes on that income, as "the tax could not be escaped by anticipatory arrangements and contracts however skillfully devised to prevent the salary when paid from vesting even for a second in the man who earned it." <u>Lucas</u>, 281 U.S. at 115, 50 S.Ct. at 241. The Court reinforced the assignment of income doctrine in <u>Horst</u> by holding that a man could not avoid paying tax on interest earned from bonds by transferring the bond interest coupons to his son before they matured. In <u>Horst</u>, the Court reasoned that the gift of the interest coupons was an assignment of income, albeit anticipatory, because the father had earned the money (by purchasing the bonds) and enjoyed

the benefit of the interest coupons by having the power to give them to his son as a gift. Horst, 311 U.S. at 120, 61 S.Ct. at 149.

We find Foster's payment of the post-judgment interest to her attorneys more analogous to Cotnam than to Lucas or Horst. Foster's case and fee agreements are governed by Alabama law, which states that attorneys, "have a lien superior to all liens but tax liens, and no person shall be at liberty to satisfy said action or judgment, until the lien or claim of the attorney for his fees is fully satisfied; and attorneys-at-law shall have the same right and power over action or judgment to enforce their liens as their clients had or may have for the amount due thereon to them." Ala. Code. § 34-3-61 (2000). Based on this law, Foster could never have received the portion of the judgment contracted as attorneys' fees. Because Foster did not have the authority to access the money she had assigned to her attorneys before the appeal, she did not "fully enjoy[] the benefit of the economic gain represented by [her] right to receive income," as did the father in Horst who gave the gift to his son. Horst, 311 U.S. at 116, 61 S.Ct. at 147.

In Cotnam, we held that fees paid to an attorney subject to a contingency fee agreement should be excluded from a taxpayer's gross income because, "[t]his sum was income to the attorneys but not to" the client. 263 F.3d at 125.[7] When a

---

[7]We recognize the circuit split on this issue. The Fifth and Sixth Circuits have applied the Cotnam ruling, while the Third, Fourth, Ninth, and Federal Circuits include contingency fees

contingency fee agreement is signed, it is unclear how much the attorney will get paid, if at all. See id. at 126 (the "fee was contingent upon success, and was fully paid by the assignment of a portion of a doubtful claim.") It is due to the hard work and expertise of the attorney that he is paid, and the attorney accordingly pays income taxes on the fees collected. We agree with the Sixth Circuit's characterization of a contingency fee as "more like a division of property than an assignment of income." Estate of Clarks v. United States, 202 F.3d 854, 857-58 (6th Cir. 2000). That court went on to explain that when a lawyer is paid based on a contingency fee,

> the lawyer's income is the result of his own personal skill and judgment, not the skill or largess of a family member who wants to split his income to avoid taxation. The income should be charged to the one who earned it and received it, not . . . to one who neither received it nor earned it.

Id.

Foster argues that the 50% of post-judgment interest that was paid to her attorneys as the result of the pre-appeal agreement should be controlled by

---

in a taxpayer's gross income. See Srivastava v. Comm'r, 220 F.3d 353, 365 (5th Cir. 2000); Estate of Clarks v. United States, 202 F.3d 854, 858 (6th Cir. 2000); O'Brien v. Comm'r, 38 T.C. 707, 712 (1962), aff'd, 319 F.2d 532 (3rd Cir. 1963); Young v. Comm'r, 240 F.3d 369, 372 (4th Cir. 2001); Coady v. Comm'r, 213 F.3d 1187, 1187 (9th Cir. 2000), petition for cert. filed, (U.S. Nov. 20, 2000) (No. 00-1326); Baylin v. United States, 43 F.3d 1451, 1452 (Fed.Cir. 1995). Cotnam is binding precedent in our circuit, Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), and has been upheld in Davis v. Comm'r, 210 F.3d 1346, 1347 n.4 (11th Cir. 2000).

Cotnam, even though the agreement was signed after the jury had returned a verdict in her favor.  We agree.  Before the appeals process, there was no guarantee that Foster would ultimately receive the amount awarded by the jury.  In fact, during the appeals process, the final judgment number was altered various times, and the ultimate number we address today is lower than the jury verdict.[8]  Also, there was no guarantee as to how long the appeals process would last, which plays a significant role in the calculation of post-judgment interest.  Therefore, we find that the pre-appeal agreement is analogous to the pre-trial agreement, and the appeal fee, namely Foster's half of the post-judgment interest, is excludable from Foster's gross income.  Therefore, she is due a refund of the taxes assessed.[9]

   C.  Award of Litigation Costs

We also find that the district court incorrectly denied Foster litigation costs under 26 U.S.C. § 7430.  The government argues that, because of the circuit split on the issues raised in Cotnam, the IRS was substantially justified in denying Foster's refund claim.  In its appeal brief, the government lists the circuits where it is litigating the Cotnam issue, and includes a list of circuits where it has won and

---

[8]The jury verdict awarded Foster $250,000 in compensatory damages.

[9]We note the government's argument that the doctrine of variance precludes this decision as the district court allegedly had no jurisdiction to consider the issue of post-judgment interest.  However, the government did not appeal the district court's opinion, which rules on the post-judgment interest claim on the merits.  Therefore, we will address the merits of the claim.

11

where it has lost. However, the IRS should not expect the individual taxpayer to fund its crusade to change the law. While other circuits may include contingency fees paid to attorneys in a taxpayer's gross income, Cotnam is clearly the law of this circuit. While it was litigating Foster's case in district court, the IRS had a similar case pending before us, where we upheld Cotnam against the protests of the IRS. See Davis v. Comm'r, 210 F.3d 1346, 1347 fn.4 (11th Cir. 2000) ("The IRS's primary argument is that Cotnam was wrongly decided and should be overruled."). According to the government's appeal brief, we denied its request for initial hearing en banc in that case, and sent the appeal to a three-judge panel. Because an en banc panel is necessary to overrule a precedential case, United States v. Woodard, 938 F.2d 1255, 1258 (11th Cir. 1991), the IRS should have understood that we were not inclined to overrule Cotnam. Because the IRS was not substantially justified in denying Foster's tax refund, as the law in this circuit was clear on the issue, she is entitled to a reimbursement of costs.

### III. CONCLUSION

We AFFIRM the district court's ruling as to the taxability of the $500,000 of punitive damages Foster received and the penalties for failure to pay taxes on that amount. We REVERSE as to the additional 50% of post-judgment interest paid to her attorneys for appellate services, as Cotnam is controlling. Accordingly, we

REVERSE as to any penalties assessed on that basis. We REVERSE the district court's decision not to order the IRS to reimburse Foster for litigation costs, for the IRS was not substantially justified in its position. Finally, we REMAND to the district court for a final computation of the refund due Foster, plus interest, and a calculation of litigation costs owed to her at this time.