T.C. Summary Opinion 2003-93

UNITED STATES TAX COURT

DeFOREST AND ROSE M. DORROH, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3701-01S.              Filed July 18, 2003.

DeForest and Rose M. Dorroh, pro se.

Gerald L. Brantley, for respondent.


COUVILLION, Special Trial Judge:  This case was heard
pursuant to section 7463 in effect when the petition was filed.[1]
The decision to be entered is not reviewable by any other court,
and this opinion should not be cited as authority.

Respondent determined a deficiency of $15,822 in

_____

   [1]   Unless otherwise indicated, section references
hereafter are to the Internal Revenue Code in effect for the year
at issue.  All Rule references are to the Tax Court Rules of
Practice and Procedure.

petitioners' Federal income tax for 1997 and a penalty under section 6662(a) in the amount of $3,164.

The issues for decision are: (1) Whether $55,000 of a $60,000 payment received by Rose M. Dorroh (petitioner) from her former employer during 1997 is excludable from gross income under section 104(a)(2), and (2) whether petitioners are liable for the penalty under section 6662(a).[2]

Some of the facts were stipulated. Those facts, with the annexed exhibits, are so found and are incorporated herein by reference. At the time the petition was filed, petitioners were legal residents of San Antonio, Texas.[3]

Petitioner was an employee of the Defense Finance and Accounting Service (DFAS), an agency in the U.S. Department of Defense. At the time her employment with that agency was mutually terminated during 1997, petitioner had completed

---

[2] At trial, respondent conceded that $5,000, representing attorney's fees paid by petitioner in recovering the $60,000, is excludable from gross income pursuant to decisions of the Court of Appeals for the Fifth Circuit to which this case would be appealable were it not a small tax case. Srivastava v. Commissioner, 220 F.3d 353, 365 (5th Cir. 2000), affg. in part, vacating and remanding in part T.C. Memo. 1998-362; Cotnam v. Commissioner, 263 F.2d 119 (5th Cir. 1959), affg. in part and revg. in part 28 T.C. 947 (1957); Golsen v. Commissioner, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971). Additionally, petitioners conceded unreported interest income of $344.

[3] Petitioners are husband and wife and filed a joint Federal income tax return for 1997. The principal issue, the $55,000, involves only Mrs. Dorroh.

approximately 18-1/2 years of service as a Federal employee. Petitioner was a data transcriber or a voucher examiner for DFAS at Kelly Air Force Base at San Antonio, Texas. In essence, petitioner's duties were to examine vouchers or bills submitted by commissary vendors and approve them for payment. Petitioner's relations with her immediate supervisors at DFAS were not good. During a confrontation with one of her superiors on September 24, 1994, petitioner sustained an injury on the job when she fell, injuring her head, neck, and back. The injury was disabling, and petitioner came under the care of a doctor. She was unable to work for intermittent periods and qualified for worker's compensation benefits under the Federal Worker's Compensation Act. Petitioner, however, continued her work with DFAS and received worker's compensation benefits when she was unable to work. After her employment with DFAS was mutually terminated in 1997, petitioner continued receiving worker's compensation benefits. At trial, petitioner had a claim pending for total and permanent disability benefits.

During the course of her employment, petitioner filed numerous complaints within and without the chain of command in DFAS complaining of various workplace conditions. Apparently not satisfied with whatever actions, if any, that were taken by DFAS to address these complaints, petitioner contacted a counselor with the Equal Employment Opportunity Commission (EEOC) at least

three times during 1995 complaining that DFAS had discriminated against her based on her race, gender, and in reprisal for having successfully prevailed against DFAS in an earlier proceeding (the nature of which was not explained at trial). Petitioner complained that, as a result, DFAS supervisors made adverse employee reviews of her, increased her workload, and did not provide her office accommodations equivalent to those of other coworkers. Petitioner engaged the services of an attorney, and an informal complaint of discrimination was filed with EEOC. In this informal complaint, the relief petitioner sought was (1) a finding of discrimination, (2) a job performance evaluation of exceptional with a cash performance award, and (3) compensatory damages of $300,000 for discrimination in violation of the Civil Rights Act of 1991, Pub. L. 102-166, sec. 1981, 105 Stat. 1071. Petitioner's informal complaint did not seek any relief for physical injury or sickness or any corrective relief relating to the September 24, 1994, incident when petitioner injured her back at work.

The EEOC counselor was not able to resolve informally petitioner's complaint and advised that she could file a formal complaint with EEOC. Petitioner, through her attorney, thereafter filed two formal complaints with EEOC, the first in 1995 and the second in 1997. In both formal complaints, petitioner alleged approximately 40 instances or occurrences in

which she was discriminated against based on race, color, national origin, sex, and reprisal for prior complaint activity. Neither of petitioner's formal complaints involved allegations of personal physical injuries or physical sickness. After an investigation by EEOC of the first formal complaint, it was determined that petitioner had established a prima facie case that DFAS had discriminated against petitioner on the basis of race and reprisal. Before an investigation by EEOC was concluded on the second formal complaint, the parties, DFAS and petitioner, agreed to submit the case to mediation. An EEOC investigator was the mediator. Petitioner's attorney represented petitioner in the mediation proceedings. In due course, a settlement agreement was reached and signed by the parties on April 2, 1997. In the agreement, petitioner agreed to resign from her employment with DFAS and not seek "employment with any DFAS activity world wide". Petitioner further agreed that she would not file any suit against DFAS for any violation of the Civil Rights Act of 1964 or under any other Federal or State law in connection with any of the formal and informal complaints she had filed with the EEOC against DFAS. In consideration for petitioner's concessions, DFAS agreed to pay petitioner $60,000, agreed to various corrections to petitioner's personnel records, cancellation of any pending disciplinary actions against her, and give only "neutral references" in any future employer inquiries of

petitioner.  DFAS paid petitioner the $60,000 during 1997.

The mediation agreement listed each of the formal and informal complaints petitioner had filed with the EEOC, and the agreement, by its terms, was for the express settlement of these complaints.  The agreement concluded that it represented the "sum total" of the provisions made by the parties with each party "having had the opportunity to read and raise questions about its meaning prior to signing."  Petitioner and her attorney signed the agreement along with a representative of DFAS and the mediator.  The agreement makes no references to settlement of any claims by petitioner for physical injuries or sickness or emotional pain and suffering, nor does the agreement make reference to petitioner's worker's compensation case and the worker's compensation benefits she was receiving at that time. The agreement, however, includes an attachment, not referenced or identified in the agreement, which is a Standard Form 50-B, U.S. Office of Personnel Management, entitled Notification of Personnel Action.  That form lists petitioner's resignation from DFAS on April 4, 1997, which was approved by DFAS on April 15, 1997.  The "Remarks" portion of the form states: "I am officially resigning from Federal service for medical and mental and physical trauma.  Please see my Dr. statement that will officially be a part of my SF 50."

For the year 1997, DFAS issued to petitioner a Form 1099 for

nonemployee compensation in the amount of $60,000 representing the amount paid by DFAS pursuant to the mediation agreement. Petitioners did not include this payment as income on their 1997 Federal income tax return. In the notice of deficiency, respondent determined that the $60,000 payment constituted gross income and further determined petitioners failed to report $344 in interest income on their 1997 Federal income tax return. As noted earlier, petitioners conceded the unreported interest income adjustment, and respondent conceded that $5,000 of the $60,000 payment was excludable from gross income.

Section 104(a)(2) excludes from gross income "the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness". Section 1.104-1(c), Income Tax Regs., defines "damages received" as "an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." Amounts are excludable from gross income only when (1) the underlying cause of action giving rise to the recovery is based on tort or tort type rights, and (2) the damages were received on account of personal injuries or sickness. Commissioner v. Schleier, 515 U.S. 323, 337 (1995).

Where amounts are received pursuant to a settlement agreement, the nature of the claim that was the actual basis for settlement controls whether such amounts are excludable under section 104(a)(2). United States v. Burke, 504 U.S. 229, 237 (1992). Determination of the nature of the claim is a factual inquiry and is generally made by reference to the settlement agreement. Robinson v. Commissioner, 102 T.C. 116, 126 (1994), affd. in part and revd. in part 70 F.3d 34 (5th Cir. 1995). "[W]here an amount is paid in settlement of a case, the critical question is, in lieu of what was the settlement amount paid". Bagley v. Commissioner, 105 T.C. 396, 406 (1995), affd. 121 F.3d 393 (8th Cir. 1997). An important factor in determining the validity of the agreement is the "intent of the payor" in making the payment. Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), affg. T.C. Memo. 1964-33. If the payor's intent cannot be clearly discerned from the settlement agreement, the intent of the payor must be determined from all the facts and circumstances of the case, including the complaint filed and details surrounding the litigation. Robinson v. Commissioner, supra at 127.

Although the taxpayer must show that the damages were received "on account of personal injuries or sickness" under the second requirement of Commissioner v. Schleier, supra, subsequent

to that decision, Congress amended section 104(a)[4] to provide that amounts are excludable only if received "on account of personal <u>physical</u> injuries or <u>physical</u> sickness".  Sec. 104(a)(2) (emphasis added).  The flush language in section 104(a) further provides that "emotional distress shall not be treated as a physical injury or physical sickness".

Under section 104(a)(2), as amended and in effect for 1997, the mediation agreement pursuant to which the $60,000 was paid to petitioner clearly was not a settlement of personal physical injuries or physical sickness.  The agreement is very explicit to the effect that the payment was in consideration of (1) the resignation of petitioner as an employee of DFAS, and (2) petitioner's agreement not to file suit against DFAS for violations of the Civil Rights Act of 1964.  Petitioner, however, sustained a personal injury in 1994 in the course of her employment; however, that injury is not addressed in the mediation agreement, and, moreover, petitioner was otherwise compensated for that injury through worker's compensation benefits she was receiving at the time of the agreement and even at the time of trial.  Petitioners argue that, because Standard Form 50 is attached to the mediation agreement, the language in

---

[4]  Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1605, 110 Stat. 1838, effective for amounts received after Aug. 20, 1996.

SF 50 is part and parcel of the mediation agreement and, therefore, establishes that the $60,000 represented payment for personal physical injuries.[5]  The Court rejects that argument. The mediation agreement carefully recites the various bases upon which settlement was reached.  Petitioner's on-the-job injury is not listed in the mediation agreement.  Indeed, if petitioner's contention is correct, and the work-related injury is deemed to have been part of the mediation agreement, such a conclusion could seriously impair petitioner's entitlement to worker's compensation benefits because the agreement was intended to settle all differences between the parties.  Petitioner, however, at the time of trial, continued pursuing her worker's compensation case.  On this record, the Court is satisfied that the $60,000 payment to petitioner by DFAS did not include any amount for physical injuries or physical suffering.  Respondent, therefore, is sustained on this issue.

The final issue is whether petitioners are liable for the accuracy-related penalty under section 6662(a) for a substantial understatement in tax or for negligence or disregard of rules and regulations.  Section 6662(a) provides that, if it is applicable to any portion of an underpayment in taxes, there shall be added

---

[5]    As noted earlier, SF 50, in the Remarks portion, stated that petitioner was resigning her employment because of "medical, mental, and physical trauma".

to the tax an amount equal to 20 percent of the portion of the underpayment to which section 6662 applies.  Under section 6664(c), however, no penalty shall be imposed under section 6662(a) with respect to any portion of an underpayment if it is shown that there was a reasonable cause for the portion, and that the taxpayer acted in good faith with respect to the portion of the underpayment.

Under section 6662(b)(2), there is a substantial understatement of income tax if the amount of the understatement exceeds the greater of (1) 10 percent of the tax required to be shown on the return, or (2) $5,000.  Sec. 6662(d)(1)(A).  For purposes of section 6662(d)(1), "understatement" is defined as the excess of tax required to be shown on the return over the amount of tax that is shown on the return, reduced by any rebates.  Sec. 6662(d)(2)(A).

Section 6662(d)(2)(B) provides that the amount of the understatement shall be reduced by that portion of the understatement that is attributable to the tax treatment of any item by the taxpayer if there is or was substantial authority for the treatment, or any item with respect to which the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return, and there is reasonable basis for such treatment.

The tax that was required to be shown on petitioners' 1997

return, based on respondent's adjustments, was $20,761.
Petitioners' return showed a tax of $4,939. Petitioners
understated their tax by $15,822, which clearly exceeds the
greater of $5,000 or 10 percent of the tax required to be shown
on the return (i.e., $2,076.10). It follows that petitioners'
understatement of tax was substantial for purposes of section
6662(d)(1)(A).[6]

The determination of whether a taxpayer acted with
reasonable cause and in good faith depends upon the facts and
circumstances of each particular case. Sec. 1.6664-4(b)(1),
Income Tax Regs. Relevant factors include the taxpayer's efforts
to assess his or her proper tax liability, the knowledge and
experience of the taxpayer, and reliance on the advice of a
professional, such as an accountant. Drummond v. Commissioner,
T.C. Memo. 1997-71. The most important factor is the extent of
the taxpayer's effort to determine the taxpayer's proper tax
liability. Sec. 1.6664-4(b)(1), Income Tax Regs. An honest
misunderstanding of fact or law that is reasonable in light of
the experience, knowledge, and education of the taxpayer may
indicate reasonable cause and good faith. Remy v. Commissioner,

---

[6] The Court recognizes that, because of respondent's
concession that $5,000 of the $60,000 settlement is excludable
from gross income and petitioners' concession of $344 in
unreported interest income, the exact amount of the
understatement will be determined in the Rule 155 computation.

T.C. Memo. 1997-72.

Petitioners did not act with reasonable cause and in good faith in failing to include the DFAS settlement as gross income on their 1997 return. Prior to filing their return, petitioners, through their attorney, contacted DFAS about the Form 1099 issued by DFAS requesting that it be corrected. Petitioners were advised in two letters from the attorney for DFAS that the payment to them was not for personal injuries and could not be excluded from gross income under section 104(a)(2). There is no showing that petitioners contacted any other professional advisors on this question. They simply chose to ignore the Form 1099 and did not include the payment as income on their 1997 tax return. Respondent, therefore, is sustained on this issue.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered

under Rule 155.