**Jack L. BAYLIN, Tax Matters Partner, Painters Mill Venture**

v.

**The UNITED STATES.**

**No. 92–586T.**

United States Court of Federal Claims.

Dec. 20, 1993.

Theodore W. Hirsch, Baltimore, MD, for plaintiff.

Barbara E. Seamen, Washington, DC, with whom was Acting Asst. Atty. Gen. Michael L. Paup, for defendant.

## OPINION

YOCK, Judge.

This tax case is before the Court on cross-motions for summary judgment pursuant to RCFC 56. In this action, Mr. Jack Baylin, the tax matters partner of the Painters Mill Venture ("plaintiff" or the "Partnership"),[1] has moved for summary judgment seeking readjustment of partnership items as set forth in the Internal Revenue Service's ("IRS") notice of Final Partnership Administrative Adjustment (FPAA).[2] The plaintiff

---

1. The instant proceeding is a partnership-level proceeding in which the partners are treated as parties. Internal Revenue Code, 26 U.S.C. §§ 6221, 6226(a), (c) (1986). Accordingly, the Court refers to Painters Mill or the "Partnership" as the plaintiff herein. All section references are to the Internal Revenue Code of 1986 ("I.R.C."), 26 U.S.C., unless otherwise identified.

2. I.R.C. § 6226 provides that:
    "Within 90 days after the day on which a notice of a final partnership administrative adjustment is mailed to the tax matters partner, the tax matters partner may file a petition for a readjustment of the partnership items for such taxable year with—
    (1) the Tax Court

alleges that a portion of the attorney's fees it incurred in a condemnation proceeding were properly deductible as "ordinary and necessary expenditures" in computing the taxable income of the Partnership. The defendant contends that no part of the plaintiff's legal fees are allocable to or deductible from the Partnership's interest income, but must be treated as a capital expense.

After a full and careful review of the pleadings, briefs, and submissions filed by the parties, and after being fully advised of the parties' respective positions in a hearing held on October 27, 1993, the Court concludes that as a matter of law, the Government's argument prevails. For the reasons set forth below, the defendant's Motion for Summary Judgment is granted, and the plaintiff's motion is denied.

### Facts

In 1948, Baltimore County, Maryland, made a request to the Maryland State Roads Commission ("SRC") to develop a plan to relocate and limit access to U.S. Route 140. In 1981, the State of Maryland initiated condemnation proceedings against 137 acres of property owned by the plaintiff. According to the plaintiff, it purchased the subject property in 1965 with an eye towards investment when it learned that the State would need approximately 19 acres of the property to complete the highway project. On April 30, 1981, the SRC commenced a "quick take" condemnation proceeding against approximately 137 acres of the plaintiff's property by filing a condemnation petition and plat with the Baltimore County Circuit Court.[3] The State also deposited into the registry of the Court what it estimated to be the fair

market value of the plaintiff's property ($2,699,775).

In the circuit court condemnation proceeding, the parties disputed the method to be used in determining the fair market value of the property condemned by the State. The Partnership claimed that only 19 acres of the condemned property were required for the project originally proposed by the State in 1948, and that the additional land subject to the condemnation (118 acres) was not necessary for the original project. In so claiming, the Partnership contended that only those original 19 acres should have been subject to the general rule that in assessing a condemnation award, any enhancement in value arising from the condemnation is to be disregarded, and that the value of the remaining 118 acres taken should have been enhanced by the existence of the proposed Northwest Highway on the original 19 acres. The State argued that any enhancement in value due to the Northwest Expressway on the original 19 acres should not be taken into consideration when valuing the remaining 118 acres. The circuit court held for the State and instructed the jury accordingly. The jury set the value of the condemned property at $3,899,000, and awarded interest and costs. Based on the jury verdict and by order of the court, the State deposited the difference between what it had originally estimated the fair market value of the property to be ($2,699,775), and the amount set by the jury ($3,899,000). In addition, the State deposited interest at 6 percent from May 1, 1981, to April 4, 1983, amounting to $131,781.55, and interest at 10 percent from April 4, 1983, to May 10, 1983, amounting to $13,196.78. In total, on May 10, 1983, the State deposited an additional $1,351,203.33 into the registry of the court.

(2) the district court of the United States for the district in which the partnership's principal place of business is located, or
(3) the Claims Court."

**3.** Quick-take proceedings are governed by Md. Code Ann., Transp. Parts III or IV, §§ 8–318 through 8–339. Sections 8–334 through 8–339 govern the accelerated quick take proceedings under which the plaintiff's property was condemned. In a quick-take proceeding, the State is entitled to take possession of the property before the fair value of the property is conclusively established. At the commencement of the quick-

take proceeding, the State pays into the registry of the Court for the owner's benefit what it estimates to be the fair market value of the property. If the parties are unable to agree on the fair market value, the valuation issue is tried and resolved by a jury. If the fair market value ultimately established by the jury is higher than the amount previously estimated, the State must pay the owner the difference plus interest on that difference. *State Road Comm'n v. G.L. Cornell Co. Sav. and Profit Sharing Trust,* 85 Md.App. 765, 584 A.2d 1331, 1332 (1991).

The plaintiff's attorney recommended that the Partnership appeal the result of the condemnation proceeding. However, because it did not want to incur additional legal expenses, the Partnership agreed to retain the attorney only on a contingency fee basis. The plaintiff agreed to an arrangement with its attorney whereby the attorney would receive a percentage of the amount recovered on appeal above what the jury had previously awarded.

On appeal, the plaintiff prevailed on the issue of valuation. In June of 1984, the appeals court reversed the circuit court's holding that the plaintiff was not entitled to have an instruction given to the jury that it could enhance the value of 118 acres of the plaintiff's property because of the existence of the proposed Northwest Highway on the original 19 acres. The appeals court thereafter remanded the case to the circuit court to determine the value of the condemned property using the correct methodology. The parties then resumed discovery and attempted to negotiate a settlement. On August 4, 1987, the State made a formal settlement proposal of $10,114,250, inclusive of any and all interest. However, the plaintiff's attorney interpreted the settlement offer to not include any interest on the value of the condemned property and suggested that the plaintiff reject the offer. Apparently, because the State's settlement offer matched the State appraiser's valuation of the property to the penny, the plaintiff's attorney believed the offer did not include interest and that the plaintiff was entitled to that amount *plus* interest. After further protracted negotiations concerning the property value, the interest issue and other collateral issues, the parties ultimately agreed to the amount of principal and interest the plaintiff was entitled to receive. Accordingly, in January of 1989, the circuit court entered a stipulated judgment in the amount of $16,319,522.91 for the plaintiff.

Although the circuit court ultimately entered a stipulated judgment in the amount of $16,319,522.91, the plaintiff received its condemnation award and interest between 1981 and 1988. Over that seven-year period, the plaintiff received its award as follows:

| YEAR | PRINCIPAL | INTEREST |
|------|-----------|----------|
| 1981 | $ 2,949,775 | |
| 1983 | $ 1,199,225 | $ 153,145 |
| 1985 | $ 61,600 | |
| 1986 | $ 200,000 | |
| 1988 | $ 6,215,250 | $6,205,273 |
| | | $ 73,998 |
| TOTAL | $10,625,850 | $6,432,416 |

For the tax year ending December 31, 1981, the plaintiff, under Internal Revenue Code (I.R.C.) § 1033, deferred recognition of the gain it realized upon the condemnation of its property.[4] Under I.R.C. § 1033, a condemnee is taxed on the full gain it realizes on a condemnation award unless it reinvests the condemnation proceeds within four years in a similar parcel or property. Although the plaintiff's initial reinvestment period would have lapsed on December 31, 1984, the plaintiff filed requests with the IRS for extensions of the statutory replacement period each year through 1988. On February 3, 1989, the plaintiff notified the IRS that it had acquired a replacement property in Hoodset, New Hampshire.

The plaintiff incurred the following legal expenses related to the condemnation proceeding, the appeal of the circuit court's ruling, and the acquisition of a replacement property:

| YEAR | LEGAL FEES |
|------|-----------|
| 1981–83 | $ 484,643 |
| 1986 | $ 24,971 |
| 1988 | $ 285,584 |
| | $4,048,424 |
| TOTAL | $4,843,622 |

---

4. Section 1033 applies in the case of "involuntary conversions," and allows a condemnee to defer recognition of any capital gain realized by investing the proceeds during a specified replacement period in property "similar or related in service or use." The nonrecognized gain is taken into account in calculating the taxpayer's basis in the replacement property

In 1988, the plaintiff reported a capital gain of $7,297,828 that it previously deferred under section 1033. The plaintiff arrived at this figure by taking the gross condemnation award ($10,625,850), and subtracting the original purchase price ($507,264), and then further subtracting the portion of the legal fees it deemed attributable to the recovery of the principal component of the condemnation award ($2,820,758). The plaintiff used the remaining portion of its legal fees that it deemed attributable to the recovery of the interest component of the condemnation award ($2,022,864) to reduce the Partnership's interest income.

The IRS, however, did not agree with the plaintiff's allocation of attorney's fees. In the final partnership administrative adjustment at issue here, the IRS calculated the plaintiff's tax by decreasing the Partnership's reported capital gain and categorizing the *entire* $4,843,622 in legal fees as a capital expenditure rather than an "ordinary and necessary" expense associated with the recovery of income. Thus, the IRS took the condemnation award ($10,625,850), subtracted the basis of the condemned property ($507,264), and further reduced the gain by the total legal fee expenditure ($4,843,622),

arriving at a total capital gain of $5,274,964. The IRS further calculated the plaintiff's taxable interest income to be the full interest award of $6,358,418. The IRS' adjustment had the effect of decreasing the Partnership's capital gain and correspondingly increasing its cost basis in the replacement property. The IRS' reallocation also increased the plaintiff's interest income by $2,022,864, increased the depreciation allowance of the new property by $31,428 and resulted in a net adjustment to ordinary income of $1,991,436 for 1988. As such, the Partnership's distributable income for 1988 increased from a loss of $237,514, to a positive taxable income of $1,753,922.

## A. The Plaintiff's Argument

The plaintiff's primary argument is that I.R.C. § 212(1) allows it to deduct from interest income its expenses, including legal fees, incurred in connection with the recovery of interest paid on a condemnation award.[5] The plaintiff argues that in the case of a contingency fee agreement in a condemnation action, the proper formula for the allocation of attorney's fees is as follows:[6]

$$\text{Attorney Fees} \times \frac{\text{Taxable Interest Income}}{\text{Total Award}} = \text{Deductible Fees}$$

In essence, the plaintiff believes that because approximately 50 percent of its total recovery was interest, approximately 50 percent of its attorney fees should be deductible from ordinary income.[7] As such, the plaintiff believes it is entitled to allocate $2,022,864 of its

attorney fees as an "ordinary and necessary" expense associated with the recovery of income and deduct this amount from its 1988 income.

In the alternative, the plaintiff argues that none of the attorney's fees it recovered in the

---

5. Section 212 provides in pertinent part:
"In the case of an individual, there shall be allowed as a deduction all ordinary and necessary expenses paid or incurred during the taxable year—
(1) for the production or collection of income;
(2) for the management, conservation, or maintenance of property held for the production of income; or
(3) in connection with the determination, collection, or refund of any tax."

6. The plaintiff cites *Church v. Commissioner*, 80 T.C. 1104, 1111 n. 8, 1983 WL 13864 (1983), a tort defamation case, in support of this formula.

7. The focus of the plaintiff's argument in this case is the proper allocation of the contingent

attorney's fees that were due the plaintiff's attorney for negotiating the additional settlement money the plaintiff received in 1988. In 1988, the plaintiff recovered $12,420,522.91 in addition to what it had already received. Of this additional sum, $6,215,250, or just over 50 percent represented the principal component of the condemnation award, and $6,205,273, or 49.9667 percent represented the interest component of the additional award. Since the interest component represented 49.9667 percent of the additional award, the plaintiff argues that it should be able to deduct $2,022,864 (or .499667 × the total 1988 contingent legal fee of $4,048,424) from ordinary income.

condemnation action should be included in its gross taxable income. The plaintiff argues that:

The portion of the award that was paid to the Partnership's counsel never belonged to the Partnership. Rather, the right to receive that amount had been transferred to counsel while that right was still uncertain and contingent, prior to the events which created the right to receive such funds (the appeal), and prior to any realization of those funds by the Partnership.

Plaintiff's Opposition, at 7 (July 2, 1993). The plaintiff concludes, therefore, that:

Since the Partnership never had any right to obtain that portion of the award that constituted counsel's legal fees, such fees are properly excludible from the Partnership's gross income. Both caselaw and the regulations of the Internal Revenue Service support such a result.

*Id.* The plaintiff further argues that because Maryland law provides for a statutory attorney's lien on settlement proceeds, the Partnership was not entitled to that portion of the proceeds and should not have reported them as taxable income.

### B. The Defendant's Argument

The defendant argues that I.R.C. § 212 does not provide for deductions at the partnership level. Thus, only individual partners, not the Partnership, could deduct any amount under section 212. Indeed, on its face, section 212 applies only "in the case of an individual," not a partnership. I.R.C. § 703(a)(2)(E). Although the Court concludes that the Partnership cannot claim a section 212 deduction, both parties agree that the issue of whether or not the plaintiff's legal fees are properly deductible is considered a "partnership item" under the I.R.C., and thus the issue is therefore properly before the Court.[8]

The defendant's primary argument is that all of the plaintiff's legal fees were a capital expenditure and were, therefore, not properly deductible from the plaintiff's interest in-

come. According to the Government under the "origin of the claim" test, unless the plaintiff can demonstrate that its claim had dual or multiple origins, none of the attorney's fees are allocable to or deductible from the partners' interest income. The defendant argues that the plaintiff had but a single claim for the involuntary condemnation of its property. According to the defendant, "the question before both the trial court and the appellate court in the condemnation proceeding was the value of the property that was taken." Defendant's Cross–Motion, at 21 (July 2, 1993). Although the defendant concedes that interest made up a large portion of the plaintiff's ultimate condemnation award, it argues that the *origin* of the claim was in the condemnation action; there could have been no independent action for interest had there been no condemnation action. Although Maryland statutes mandate the payment of interest in a quick-take condemnation action, the defendant argues that these statutes do not provide for a claim independent of the condemnation action. Although the plaintiff argues that "[o]nly after the Partnership's attorney demanded and fought for interest, was any forthcoming," the defendant counters that "[u]nder the origin of the claim test, it simply does not matter that for a few months * * * out of a six-year condemnation proceeding the interest computation became part of the settlement discussions." Plaintiff's Motion, at 22 (April 30, 1993); Defendant's Cross–Motion, at 22 (June 1, 1993).

### *Discussion*

It is clear that "[a] taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within its terms." *New Colonial Ice Co. v. Helvering,* 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348 (1934). In the case at bar, the relevant statutory framework begins with I.R.C. § 212, which reads in pertinent part:

In the case of an individual, there shall be allowed as a deduction all the ordinary

---

**8.** The "partnership item" at issue in the instant case is the claimed deduction of litigation expenses by the plaintiff on its 1988 return under section 212. A section 212 deduction is consid-

ered a "partnership item" under Treas.Reg. § 301.6231(a)(3)–1, however, such a deduction is only available to the individual partners on their respective tax returns. I.R.C. § 703(a)(2)(E).

and necessary expenses paid or incurred during the taxable year—

　(1) for the production or collection of income;

　(2) for the management, conservation, or maintenance of property held for the production of income; or

　(3) in connection with the determination, collection, or refund of any tax.

I.R.C. § 212 (1986). The plaintiff concedes that "[i]n its regulations under this provision, the Internal Revenue Service has stated that certain expenditures, including legal fees, which are capital expenditures are not deductible under this statutory provision." Plaintiff's Motion, at 6 (April 30, 1993). The converse is also true—legal fees expended for the production or collection of income *are* deductible. Treas.Reg. § 1.212–1(k) provides that:

> Expenses paid or incurred in defending or perfecting title to property, in recovering property (other than investment property and amounts of income which, if and when recovered, must be included in gross income), or in developing or improving property, constitute a part of the cost of the property and are not deductible expenses. Attorney's fees paid in a suit to quiet title to lands are not deductible; but if the suit is also to collect accrued rents thereon, that portion of such fees is deductible which is properly allocable to the service rendered in collecting such rents.

*Id.*

■ Under the I.R.C., if an expense is capital, it cannot be deducted as "ordinary and necessary," under either Treas.Reg. § 1.212–1(k) or I.R.C. § 212. Such expenditures are added to the basis of the capital asset on which they were expended and a taxpayer may take such expenditures into account for tax purposes by either depreciating that capital asset or by reducing the capital gain or increasing the loss when the asset is transferred. Unfortunately, "[t]he line of demarcation between currently deductible and capital expenditures is often a shadowy one * * *." *Boagni v. Commissioner,* 59 T.C. 708, 712, 1973 WL 2589 (1973). Indeed, Treas.Reg. § 1.212–1(k) recognizes that within a single law suit, one

portion of the legal fees may be deductible while another is not.

■ In determining whether legal fees expended in litigation are to be capitalized or deducted, courts look to the origin, character and nature of the claim pursued during the litigation. *Woodward v. Commissioner,* 397 U.S. 572, 90 S.Ct. 1302, 25 L.Ed.2d 577 (1970). Although the plaintiff argues that the Court should look to the taxpayer's motive or purpose in the condemnation litigation, such a test would "encourage resort to formalisms and artificial distinctions," and would be an uncertain and difficult test to administer. *Id.* at 577, 90 S.Ct. at 1306; *see* Plaintiff's Motion, at 9 (April 30, 1993) ("In spite of this firm legal basis of regulation and case law supporting the allocation of legal fees in dual *purpose* litigation, it is surprising that the Defendant has taken [a] totally different approach in the [sic] those cases involving condemnation proceedings.") (emphasis added). Instead of using a "primary purpose" test (which focuses on the plaintiff's motive or purpose) or a "consequences of the litigation" test (which focuses on the outcome of the litigation), the Supreme Court adopted a test requiring the Court to look to the origin of the taxpayer's claim. *Woodward,* 397 U.S. 572, 578, 90 S.Ct. 1302, 1306, 25 L.Ed.2d 577 (1970) (citing *United States v. Gilmore,* 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963)). In describing the Supreme Court's "origin of the claim" analysis, this Court has held that:

> The object of the "origin of the claim" test is to find the transaction or activity from which the taxable event approximately resulted, [citations omitted], or the event that "led to the tax dispute." [citations omitted]. The origin is defined by analyzing the facts and determining what the basis of the transaction is, and does not rely on purpose, consequence or result.

*McKeague v. United States,* 12 Cl.Ct. 671, 675 (1987) (quoting *Keller Street Dev. Co. v. Commissioner,* 688 F.2d 675, 681 (9th Cir. 1982); *United States v. Gilmore,* 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963)).

Although *Woodward* was not a condemnation case, the Supreme Court was clearly

aware that the logic of its decision would extend to condemnation actions. In *Woodward*, the petitioners were majority stockholders of an Iowa corporation that sought to deduct attorneys' and accountants' fees associated with an action to enforce their statutory right of appraisal. In holding that the expenses incurred by the petitioners were capital in nature, and therefore nondeductible, the Supreme Court looked to the fact that the petitioners' statutory right of appraisal was merely a *statutory substitute for price negotiations.* As such, the Court held that the petitioners utilized their attorneys to enforce a statutory right allowing them to either acquire or dispose of property. As such, the Supreme Court held that the legal fees were capital expenses. The Court, while recognizing that there might be borderline cases, held that *Woodward* was not one of those:

> Here state law required the [petitioners] to "purchase" the stock owned by the dissenter. In the absence of agreement on the price at which the purchase was to be made, litigation was required to fix the price. Where property is acquired by purchase, nothing is more clearly part of the process of acquisition than the establishment of a purchase price. Thus, the expenses incurred in that litigation were properly treated as part of the cost of the stock that the [petitioners] acquired.

*Woodward*, 397 U.S. at 579, 90 S.Ct. at 1307. The case at bar is a logical extension of the *Woodward* decision. In this case, the parties could have avoided litigation by agreeing on the fair market value of the plaintiff's property. Unfortunately, the parties were unable to agree on a price, and the plaintiff pursued litigation. As the Supreme Court held in *Woodward*, "nothing is more clearly part of the process of acquisition than the establishment of a purchase price." *Id.* at 579, 90 S.Ct. at 1307. The converse is also true— nothing is more clearly part of the process of property disposition than the establishment of a purchase price. While the interest component of a condemnation award may be significant and independently negotiated, the origin of the claim can be traced to a set of statutes that are meant to provide an alternative when/if price negotiations are unsuc-

cessful. Thus, the expenses incurred in that litigation were properly categorized as part of the cost of the disposition of the plaintiff's property.

The plaintiff here, like the plaintiff in *Woodward*, argues that such an analysis is inappropriate in this case because the transaction was an involuntary one. However, as the Supreme Court held in *Woodward:*

> [W]herever a capital asset is transferred to a new owner in exchange for value either agreed upon or determined by law to be a fair *quid pro quo,* the payment itself is a capital expenditure, and there is no reason why the costs of determining the amount of that payment should be considered capital in the case of a negotiated price and yet considered deductible in the case of a price fixed by law.

*Id.* at 579 n. 8, 90 S.Ct. at 1306 n. 8 (citing *Isaac G. Johnson & Co. v. United States,* 149 F.2d 851 (2d Cir.1945) (expenses of litigating amount of fair compensation in condemnation proceeding held capital expenditure).

The *Isaac Johnson* case, cited by the Supreme Court in *Woodward,* is for all practical purposes identical to the case at bar. In that case, the plaintiff was a New York corporation that owned property near the Harlem Ship Channel. The State of New York took title to the plaintiff's property by eminent domain in September of 1933, but compensation for the condemned property was not determined until the termination of litigation by judgment in June of 1939. The total award of $143,183.83 consisted of two components—$110,755.25 represented the value of the property on the date it was taken, and $32,428.58 represented interest at a statutory rate of 6 percent per annum from the vesting of title until the entry of judgment. During the course of litigation, the plaintiff incurred legal fees in the amount of $29,968.79.

In computing the corporation's income tax for the year 1939, the Commissioner included as income the interest portion of the condemnation award but disallowed any deduction for legal fees. This adjustment resulted in a deficiency assessment which the plaintiff paid, and after the plaintiff's claim for a refund was rejected, the plaintiff sought re-

view in district court. The district court sustained the Commissioner's ruling that the interest portion of the condemnation award was reportable income, but allowed the plaintiff to deduct $19,950.17 of its legal fees incurred in the condemnation proceeding. On appeal, the United States Court of Appeals for the Second Circuit reversed the district court and held that legal fees and expenses incurred in defending a condemnation suit are capital expenditures and must be reported as such. *Isaac Johnson*, 149 F.2d at 852 and n. 4.

The plaintiff attempts to distinguish the *Isaac Johnson* case from the present case by arguing that the plaintiff in the *Isaac Johnson* case did not properly apportion its attorney's fees to income and capital gains. The plaintiff argues that:

> Clearly the court in the *Isaac Johnson* case reached the proper result under the facts presented to it, even if the court was not too articulate in its explanation of the reason for the result. The Johnson Company had previously claimed an ordinary deduction for more than 50% of the legal fees and expenses paid by it in connection with the condemnation proceeding. Since only 23% of the total award received in the condemnation proceeding was interest, it is reasonable to conclude that no more of the expenditures could be allocated to the interest.

Plaintiff's Motion, at 14 (April 30, 1993). Unfortunately for the plaintiff, the rationale it projects upon the *Isaac Johnson* court finds no support in the text of that opinion. Moreover, the Supreme Court's favorable citation to the *Isaac Johnson* case in *Woodward* further strengthens the Government's argument that legal expenses are nondeductible from ordinary income in condemnation actions.

The plaintiff, however, argues that its claim against the State had a "dual origin," unlike the single origin of the plaintiff's claim in *Woodward*. The plaintiff in this case claims it had one claim against the State for the constitutional/statutory condemnation, and one for the interest provided by Maryland statute. According to the plaintiff, "in those situations where a claim is in part nondeductible or capital in origin and part

deductible in origin, the courts, in applying this statute and the regulations thereunder, have concluded that an allocation of the legal fees is required." Plaintiff's Motion, at 7–8 (April 30, 1993). The plaintiff has not, however, cited a single case from the Tax Court, the district court, or any other court that supports the allocation of attorney's fees it urges in this condemnation action. In fact, the condemnation cases cited in both parties' briefs uniformly support the defendant's position.

Another case squarely on point with the case at bar is *Fulks v. Commissioner*, 57 T.C.M. (CCH) 242, 1989 WL 39306 (1989), in which the Tax Court addressed the allocation and deduction of attorney's fees in a condemnation action. The *Fulks* case involved a condemnation action under the same Maryland quick-take statute and interest provision at issue in the present case. The plaintiff in the *Fulks* case argued that the interest award in the condemnation action should have been reduced by a prorated amount of the attorney's fees expended in pursuing the condemnation award. In addressing the argument, the Tax Court held:

> A property owner's expenses in connection with a condemnation, incurred to increase the award for the loss of property, are capital expenditures. Petitioner's attorney's fees were for services in connection with obtaining the jury award. Interest on the jury award accrued as a matter of right so that it cannot be said that the attorney's services made any direct contribution to the interest element. Thus, there is no basis for allocating any amount of the fee to the collection of interest. Therefore, the attorney's fees in this case were capital expenses deductible solely from the jury award.

*Id.* at 244 (footnotes and citations omitted).

Despite the fact that the *Fulks* case involved the exact same Maryland statutes at issue in the case at bar, the plaintiff here attempts to distinguish that case. The plaintiff argues that, unlike the attorney in *Fulks*, the plaintiff's attorney fought zealously, both at trial and on appeal, for a larger interest settlement that it would not have received but for his efforts. The Court finds this

argument to be disingenuous at best. First of all, as the *Fulks* court found, the plaintiff's claim in a condemnation action does not have dual origins. Interest accrues by right under the Maryland statute at issue in this case, and although the interest rate is not fixed *per se*, the plaintiff is guaranteed a minimum of 6 percent per annum prejudgment interest upon the condemnation of its property. *See, e.g., State Roads Comm'n v. G.L. Cornell Co. Sav. & Profit Sharing Trust*, 85 Md.App. 765, 584 A.2d 1331 (1991); *King v. State Road Comm'n*, 298 Md. 80, 467 A.2d 1032 (1983). The "dual origin" test is a threshold obstacle the plaintiff must overcome and, absent a dual origin, the quantity and quality of the attorney's efforts in obtaining a larger interest settlement are irrelevant. Furthermore, even if there were a claim of dual origin here, which there is not, the plaintiff has conceded that its attorney spent a *de minimis* amount of time pursuing the interest component of the condemnation award. The following excerpt gives an indication of how much time and effort the plaintiff's attorney spent "demanding and fighting" for the plaintiff's interest award:

> THE COURT: Did the attorney keep any records at all about how much time was spent on the interest?
>
> MR. HIRSH: He has advised us, and there's his letter in the, in the documents that are attached to the summary judgment, he did keep time records only for internal management purposes and did not keep time records for billing the client.
>
> THE COURT: Well, my, okay, but the question is, are there any records that would indicate that, that this hour was spent negotiating with the State of Maryland on the interest question?
>
> MR. HIRSH: I would think you could probably get those records from a time standpoint, *the interest portion was a very, very small percentage of his time. The interest portion probably took a very, very small percentage of his time.* The case in chief from 1981 to 1983 related only to the appeal portion. The—only after remand, and the State's offer denying interest, was there any action by the plaintiff's attorney for the question of interest. *A very mini-*

*mal amount of time was spent on the interest portion. I don't think that there's any question as to that.*

Hearing Transcript, at 11 (Nov. 1, 1993) (emphasis added). The plaintiff's attorney spent the vast majority of his time focusing on the valuation of the condemned property—the sole origin of a condemnation claim. Although the plaintiff's attorney's efforts incidentally increased the amount of interest the plaintiff ultimately recovered, the primary focus at trial and on appeal was on the proper method to be used in valuing the condemned property.

It is for this reason that the Court concludes that the condemnation action at issue in the case at bar had but a single origin, and that as such, under the applicable IRS regulations, the plaintiff is not entitled to deduct any portion of its legal fees from either the Partnership's interest income or from that of the individual partners.

One additional issue warrants further discussion. The plaintiff argues in the alternative that it entered into a contingency fee agreement with its attorney whereby the Partnership assigned its right to a portion of any additional condemnation recovery obtained by its attorney on appeal. The plaintiff contends that because its attorney received his fee directly from the circuit court and because he had a statutory lien on the settlement proceeds under Maryland state law, the plaintiff had no right to that portion of the proceeds. As such, the plaintiff argues that its legal fees are not properly includable in the plaintiff's gross taxable income. As support for its argument, the plaintiff cites Md.Code Ann. § 46(a), Art. 10 (Repl.Vol.1987), which grants an attorney a statutory lien on [j]udgments, decrees, orders, and awards entered in favor of the attorney's client, and Treas.Reg. § 301.-6323(b)(8), which grants an attorney's lien priority over a previously filed federal tax lien. The plaintiff also cites *Cotnam v. Commissioner*, 263 F.2d 119 (5th Cir.1959) in support of its argument.

■ Analytically, the plaintiff's argument presents two questions: whether the form of the plaintiff's contractual arrangement with its attorney can make a portion of its con-

demnation award nontaxable, and whether the Maryland attorney lien statute stripped the plaintiff of any right it had in the condemnation award and made a portion of the condemnation award nontaxable. With regard to the first issue, there can be no question that the I.R.C. elevates substance above form. *Freytag v. Commissioner*, 904 F.2d 1011, 1015 (5th Cir.1990) ("The fundamental premise underlying the Internal Revenue Code is that taxation is based upon a transaction's substance rather than its form."). In fact, the Supreme Court has held that:

> [T]he rule that income is not taxable until realized has never been taken to mean that the taxpayer, even on the cash receipts basis, who has fully enjoyed the benefit of the economic gain represented by his right to receive income, can escape taxation because he has not himself received payment of it from his obligor. * * * [Taxation] may occur when he has made such use or disposition of his power to receive or control the income as to procure in its place other satisfactions which are of economic worth. * * * [T]he import of the statute is that the fruit is not to be attributed to a different tree from that on which it grew.

*Helvering v. Horst*, 311 U.S. 112, 116–20, 61 S.Ct. 144, 147–49, 85 L.Ed. 75 (1930). It is for this reason that "[taxation cannot] be escaped by anticipatory arrangements and contracts however skillfully devised to prevent [the award] when paid from vesting even for a second in the man who earned it." *Lucas v. Earl*, 281 U.S. 111, 115, 50 S.Ct. 241, 74 L.Ed. 731 (1930). The plaintiff in the case at bar enjoyed the full benefit of the condemnation award by using a portion of it to compensate its attorney for his services. This is so regardless of whether the attorney was retained on an hourly basis or on a contingency basis. In terms of *Lucas v. Earl*, the fruit of the condemnation action was fully attributable to the plaintiff out of whose constitutional right to just compensation such fruit was borne. *See, e.g., Lucas v. Earl*, 281 U.S. 111, 115, 50 S.Ct. 241, 74 L.Ed. 731 (1930); *Helvering v. Horst*, 311 U.S. 112, 116, 61 S.Ct. 144, 147, 85 L.Ed. 75 (1930); *United States v. Basye*, 410 U.S. 441, 93 S.Ct. 1080, 35 L.Ed.2d 412 (1973).

The Court also finds no merit in the plaintiff's argument that it should not be taxed on the portion of its award that it used to pay its attorney because, under Maryland law, its attorney had a statutory lien on the proceeds. The plaintiff claims that it should not be taxed on proceeds which by law it had no right to receive. The plaintiff's argument, as adopted in the case of *Cotnam v. Commissioner*, 263 F.2d 119, 126 (5th Cir.1959), however, misconstrues the basic nature and function of a lien, and it is for this reason that this Court declines to follow that logic. With respect to the nature of statutory attorney's liens, the Maryland courts have held that:

> Like any other lien, this lien does not create an ownership interest in the attorney, but merely places a charge upon the fund as security for the debt which is owed to the attorney by his client. *Chanticleer Skyline Room, Inc. v. Greer*, 271 Md. 693, 700–701, 319 A.2d 802 (1974) (citations and footnote omitted)

*Board of Educ. of Washington County v. Renehan*, 66 Md.App. 390, 504 A.2d 653, 655 (Md.Ct.Sp.App.1986); *Prince George's County, Maryland v. Feissner*, 37 Md.App. 124, 377 A.2d 1185, 1191 (Md.Ct.Sp.App.1977). The plaintiff's contention that it had no right to or ownership in that portion of the condemnation proceeds it owed to its attorney under the contingency fee agreement is simply without legal basis. Like the owner of a home or an automobile must pay taxes properly levied against those assets regardless of whether they are encumbered by liens, so too must the plaintiff here pay taxes on the benefit it received from the condemnation award. The fact that the plaintiff chose to retain its attorney on a contingency fee basis rather than on an hourly basis cannot serve to change the taxability of the award it received. The contingency fee agreement merely established the amount the plaintiff was obligated to pay—it did not specify out of which funds such amounts had to be paid. As such, the plaintiff used a portion of the condemnation award, instead of using other equally available funds, to its benefit by using the award to extinguish its debt to its attorney.

In summary, as a matter of law, the plaintiff is not entitled to deduct any portion of its attorney fees from the interest income it recovered in the underlying condemnation action. The plaintiff cannot meet its burden of establishing that its claim against the State of Maryland had dual origins, nor can it succeed in its argument that the portion of its condemnation award it used to pay its attorney's fees should not be included as gross taxable income.

## CONCLUSION

For the reasons set forth above, this Court holds that neither the plaintiff nor its individual partners may allocate or deduct the attorney's fees it paid from the interest income it recovered in the underlying condemnation action. This Court further holds that the portion of the condemnation award paid by the plaintiff to its attorney pursuant to the contingency fee agreement is properly included, *pro rata*, in the partners' reportable gross income. As such, the defendant's Motion for Summary Judgment is granted, and because the IRS' adjustment as reflected in its 1988 FPAA is correct, the plaintiff's motion seeking a readjustment is denied. Accordingly, the Clerk shall dismiss the plaintiff's complaint.

Each party is to bear its own costs.