Jack L. BAYLIN, Tax Matters Partner, Painters Mill Venture, Plaintiff–Appellant,

v.

The UNITED STATES, Defendant–Appellee.

No. 94–5063.

United States Court of Appeals, Federal Circuit.

Jan. 5, 1995.

1452

Theodore William Hirsh, Miles & Stockbridge, Baltimore, MD, argued, for plaintiff-appellant. With him on the brief was Ann M. Sheridan.

Bruce Ellison, Dept. of Justice, Washington, DC, argued, for defendant-appellee. With him on the brief were Loretta C. Argrett, Asst. Atty. Gen., Gary R. Allen and Sara S. Holderness.

Before RICH, MAYER, and SCHALL, Circuit Judges.

MAYER, Circuit Judge.

On cross-motions for summary judgment, the United States Court of Federal Claims granted the government's motion and held that the legal fees of the Painters Mill Venture were a capital expenditure and that the portion of the condemnation award paid to its attorney under a contingency fee agreement was gross income to the partnership. *Baylin v. United States,* 30 Fed.Cl. 248 (1993). We affirm.

*Background*

Baylin is the tax-matters partner of Painters Mill Venture, a partnership, which owned 137 acres of land condemned by the State Roads Commission of the Maryland State Highway Administration under state law "quick-take" provisions. *See* Md.Code Ann., Transp. §§ 8–334 to –339 (repl. vol. 1993); 30 Fed.Cl. at 249. Pursuant to those provisions, the government deposited $2,699,775, its estimate of the fair market value of the property, in the registry of the Baltimore County Circuit Court. The partnership disagreed with that estimate and filed suit in state court, and a jury awarded the partnership $3,899,000 plus interest and costs. *See id.* at 250.

When the partnership decided to appeal this condemnation award, it entered into a contingency fee arrangement with its attorney under which it agreed to pay him a percentage of any amount recovered above the previous award. *See id.* at 251. The

appeals court determined that the trial court used the wrong standard for valuation of the property and remanded for a new valuation. The state then proposed a settlement of $10,-114,250, including interest. After further negotiations, the parties agreed to a settlement of $16,319,522.91, and the trial court entered a stipulated judgment in that amount in January of 1989. *See id.* The partnership received its condemnation award and interest between 1981 and 1988 in slightly different amounts than what was in the stipulated judgment—namely, $10,625,850 in principal and $6,358,418 in interest.* The partnership's legal expenses for the appeal amounted to $4,048,424. *See id.* at 252.

In 1988, the partnership reported a capital gain of $7,297,828 on the property.** It arrived at that figure by subtracting from the principal portion of the condemnation award the purchase price of the property and the portion of its legal fees that it attributed to recovery of principal. *See id.* The partnership deducted from interest income the remaining portion of the legal fees, which it attributed to recovery of the interest portion of the award and thus regarded as a deductible ordinary and necessary business expense "paid or incurred ... for the production or collection of income." 26 U.S.C. § 212(1) (1988).

The IRS classified all of the legal fees as a capital expenditure and calculated a capital gain of $5,274,964 by adding all of the legal fees to the basis of the condemned property. Total taxable interest income for 1988, according to the IRS, equalled $6,205,273. The partnership challenged the IRS's calculations in the Court of Federal Claims, which agreed with the IRS and granted summary judgment in favor of the government. *See* 30 Fed.Cl. at 259.

### Discussion

The parties agree that the portion of the partnership's legal expenses attributable to its attorney's efforts to increase the principal portion of its condemnation award is a nondeductible capital expense under section 263(a) of the Internal Revenue Code of 1986. *See* 26 U.S.C. § 263(a) (1988). They disagree, however, over the proper measure of the legal fees attributable to that capital expense. The partnership contends that it should be allowed to deduct from interest income an amount of its attorney's fees proportionally equivalent to the amount of the settlement classified as interest. In other words, because approximately one-half of the partnership's additional recovery following its appeal represented interest on the condemnation award, and because the partnership paid its attorney a percentage of the entire additional recovery, the partnership believes that approximately one-half of its legal fees, or approximately $2,000,000, should be deducted from the interest income under section 212(1).

■ The partnership is correct that legal fees may, under certain circumstances, be partially deductible and partially nondeductible. *See, e.g.,* Treas.Reg. § 1.212–1(k) (as amended in 1972 and 1975). But under the "origin of the claim" test it may not base the tax treatment of the legal fees on the relative amounts of principal and interest income ultimately received. Under that test, established by the Supreme Court in *United States v. Gilmore,* 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963), and developed more fully in *Woodward v. Commissioner,* 397 U.S. 572, 90 S.Ct. 1302, 25 L.Ed.2d 577 (1970), the proper focus is not the proportional recovery of each type of income, but the "origin and character of the claim" with respect to which the legal fees at issue were incurred. *Woodward,* 397 U.S. at 578, 90 S.Ct. at 1306. This court has explained that, "[u]nder the origin of the claim test, if the origin of an expenditure is capital in nature (such as the ... disposition of a capital asset), the expenditure is not deductible as an ordinary business expense, irrespective of the taxpayer's moti-

---

* The Court of Federal Claims incorrectly stated that interest payments totalled $6,432,416, because the court twice added a payment of $73,-998 made in 1988. *See* 30 Fed.Cl. at 251.

** The partnership had deferred recognition of the capital gain under I.R.C. § 1033. *See 26 U.S.C.*

§ 1033 (1988). Unless otherwise noted, all section references are to the Internal Revenue Code of 1986, 26 U.S.C. §§ 1–9722, as amended as of the taxable year in question.

vation for making the expenditure." *Stoke-ly–Van Camp, Inc. v. United States,* 974 F.2d 1319, 1324 (Fed.Cir.1992).

■ Here, the origin of the partnership's claim is in the disposition of its land. Under procedures established by the Maryland legislature, the partnership successfully disputed the state's estimate of the value of its land and later successfully argued that the Maryland trial court had used an improper method of valuation and that the land's value was, as a result, higher than either the state's estimate or the original jury award. We thus agree that "the origin of the claim can be traced to a set of statutes that are meant to provide an alternative when/if price negotiations are unsuccessful." 30 Fed.Cl. at 255. Efforts to increase the price of property are properly characterized as "part of the process of property disposition." *Id.; accord Isaac G. Johnson & Co. v. United States,* 149 F.2d 851, 852 (2d Cir.1945). Costs related to property disposition are capital expenditures. *See, e.g., Woodward v. Commissioner,* 397 U.S. 572, 575, 90 S.Ct. 1302, 1305, 25 L.Ed.2d 577 (1970).

The partnership's emphasis on the fact that the attorney's fees were paid out of the entire recovery—both principal and interest—is thus misplaced. This argument rests on the unsupported assumption that approximately half of the legal fees were paid for the collection of income simply because approximately half of the eventual recovery was interest income and approximately half of the legal fees were paid out of that income under the partnership's fee agreement with its attorney. The relative portion of the recovery that was labeled interest does not necessarily approximate the fees incurred to produce that income. To the contrary, the evidence presented on the attorney's allocation of his time suggests that he spent a *de minimis* amount attempting to increase the interest portion of the award. *See* 30 Fed.Cl. at 257; *cf. Crews v. Commissioner,* 67 T.C.M. (CCH) 2189, 1994 WL 50461 (1994) (holding that three percent of the company's attorneys' fees were deductible because the attorney presented proof that three percent of his time was spent in supplemental hearings to establish the rate of prejudgment interest on a condemnation award).

■ A taxpayer must prove each deduction from income. *See Interstate Transit Lines v. Commissioner,* 319 U.S. 590, 593, 63 S.Ct. 1279, 1281, 87 L.Ed. 1607 (1943) ("[A]n income tax deduction is a matter of legislative grace and ... the burden of clearly showing the right to the claimed deduction is on the taxpayer."). Here, the partnership did not meet that burden. The entire legal fee was a capital expense under the origin of the claim test.

■ The partnership argues alternatively that, because the attorney was paid a portion of the condemnation recovery directly under the contingency fee agreement, that portion of the recovery was never part of the partnership's gross income. Very little need be said about this argument, which, if accepted, would elevate form over substance and allow the partnership to escape taxation on a portion of its income through a "skillfully devised" fee arrangement. *Lucas v. Earl,* 281 U.S. 111, 115, 50 S.Ct. 241, 241, 74 L.Ed. 731 (1930) (Holmes, J.). Section 61(a) of the Internal Revenue Code provides that "gross income means all income from whatever source derived," and the Supreme Court "has given a liberal construction to the broad phraseology of the 'gross income' definition statutes in recognition of the intention of Congress to tax all gains except those specifically exempted." *James v. United States,* 366 U.S. 213, 219, 81 S.Ct. 1052, 1055, 6 L.Ed.2d 246 (1961).

Here, although the partnership did not take actual possession of the funds it paid to its attorney, opting instead to pay him directly out of its eventual recovery, it is evident that the partnership received the benefit of those funds in that the funds served to discharge the obligation of the partnership owing to the attorney as a result of the attorney's efforts to increase the settlement amount. The fee arrangement signifies the value that the parties placed on the attorney's services. In other words, the partnership "made such use or disposition of [its] power to receive ... the income as to procure in its place other satisfactions which are of economic worth." *Helvering v. Horst,* 311

U.S. 112, 116, 61 S.Ct. 144, 147, 85 L.Ed. 75 (1940). That the partnership assigned a portion of its condemnation recovery to its attorney before it knew the exact amount of the recovery does not mean that this amount never belonged to the partnership; it means simply that the attorney and client chose to estimate the value of the attorney's services by tying the fee to the ultimate recovery and by having the obligation of the client to the attorney discharged by having the state pay the attorney his fees directly from the recovery. The temporarily uncertain magnitude of the legal fees under such an arrangement and the vehicle of an assignment cannot dictate the income tax treatment of those fees.

■ The partnership also relies on a Maryland statute that gives an attorney a lien on "attorney's fees and compensation specially agreed on with the attorney's client." Md. Ann.Code art. 10, § 46 (repl. vol. 1987), *recodified at* Md.Code.Ann.Bus.Occ. & Prof. § 10–501 (1989). The argument that this statute gives the attorney an ownership interest in those funds is unsound. Maryland courts have not interpreted the state's lien statutes as creating such an interest. *See,*

*e.g., Chanticleer Skyline Room, Inc. v. Greer,* 271 Md. 693, 319 A.2d 802, 806 (1974) ("*Like any other lien,* this lien does not create an ownership interest in the attorney, but merely places a charge upon the fund as security for the debt which is owed to the attorney by his client." (Emphasis added)). The partnership's "contention that it had no right to or ownership in that portion of the condemnation proceeds it owed to its attorney under the contingency fee agreement is simply without legal basis," 30 Fed.Cl. at 258, and the entire condemnation award was properly considered gross income to the partnership.

### Conclusion

Accordingly, the judgment of the Court of Federal Claims is affirmed.

AFFIRMED.