*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0020P (6th Cir.)
File Name:  00a0020p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ESTATE OF ARTHUR L. CLARKS, by and through its duly appointed Independent Personal Representative, MARY J. BRISCO-WHITTER, also known as MARY J. CLARKS,

       *Plaintiff-Appellant,*

*v.*

UNITED STATES OF AMERICA,
       *Defendant-Appellee.*



No. 98-2437

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 96-60446—George C. Steeh, District Judge.

Argued:  December 16, 1999

Decided and Filed:  January 13, 2000

1

Before: MERRITT and SILER, Circuit Judges;
BECKWITH, District Judge.

---

**COUNSEL**

---

**ARGUED:** Harley D. Manela, LAKRITZ, HERMAN & WISSBRUN, Bingham Farms, Michigan, for Appellant. Kenneth W. Rosenberg, U.S. DEPARTMENT OF JUSTICE, APPELLATE SECTION, TAX DIVISION, Washington, D.C., for Appellee. **ON BRIEF:** Harley D. Manela, LAKRITZ, HERMAN & WISSBRUN, Bingham Farms, Michigan, for Appellant. Kenneth W. Rosenberg, Kenneth L. Greene, U.S. DEPARTMENT OF JUSTICE, APPELLATE SECTION, TAX DIVISION, Washington, D.C., for Appellee.

---

**OPINION**

---

MERRITT, Circuit Judge.   The question on appeal concerns the federal income taxation of clients on contingent fees paid to lawyers. In June 1988, a jury awarded Arthur Clarks $5,600,000 in personal injury damages against K-Mart for head injuries sustained while unloading his truck. In 1991, K-Mart paid $11,307,875.55 in total satisfaction of the judgment, $5,600,000 for the award and $5,707,837.55 in interest. From that amount, the judgment debtor paid Clarks' lawyer under a one-third, contingent fee contract $1,865,156.54 based on the original award and $1,901,314.67 based on the interest for a total fee of $3,766,471.21. After Clarks died in March 1992, his estate filed his 1040 for the 1991 tax year. Recovery for personal injury is ordinarily not taxable under § 104(a)(2) of the Internal Revenue Code, but the interest on the award is. The only question before us on

---

\* The Honorable Sandra S. Beckwith, United States District Judge for the Southern District of Ohio, sitting by designation.

interest, only a hope to receive money from the lawyer's efforts and the client's right, a right yet to be determined by judge and jury. Clarks, as an assignor, had no predetermined interest in any res before entering a contingency fee arrangement with his attorney, unlike the taxpayer plaintiffs in *Lucas* and *Horst*. There was no purpose to shift tax liability among members of a family.

In *Lucas* and *Horst,* the assignees were the object of gifts and not subject to income taxation themselves if the income was taxed to their assignor or donor. The IRS chose to tax the assignors, not both the donors and donees. By having the income taxed to the donor, the donee escapes income taxation. Not so here. Here the lawyer is taxed on the full amount of the payment. Under the government's theory both the lawyer and the client are taxable.

The present transaction under scrutiny is more like a division of property than an assignment of income. Here the client as assignor has transferred some of the trees in his orchard, not merely the fruit from the trees. The lawyer has become a tenant in common of the orchard owner and must cultivate and care for and harvest the fruit of the entire tract. Here the lawyer's income is the result of his own personal skill and judgment, not the skill or largess of a family member who wants to split his income to avoid taxation. The income should be charged to the one who earned it and received it, not as under the government's theory of the case, to one who neither received it nor earned it. The situation is no different from the transfer of a one-third interest in real estate that is thereafter leased to a tenant. *See Wodehouse v. Comm'r*, 177 F.2d 881, 884 (2d Cir. 1949); Surrey, "Assignments of Income and Related Devices, Choice of the Taxable Person," 33 COL. L. REV. 791 (1933).

For the forgoing reasons, we reverse the judgment of the district court and grant plaintiff estate's motion for summary judgment.

never received the income apportioned to his wife and Horst never actually received any interest from the coupons, both claimed that they should not have to include the assignment as income. In rejecting the taxpayer's argument, the Supreme Court concluded that the "dominant purpose of the revenues laws is the taxation of income to those who earn or otherwise create the right to receive it and enjoy the benefit of it when paid." *Horst*, 311 U.S. at 119. In *Lucas* and *Horst*, each taxpayer earned and created the right to receive and enjoy the benefit of the income before any assignment.

We follow *Cotnam* concluding that the majority in *Cotnam* correctly distinguished *Lucas v. Earl*, 281 U.S. 111 (1930), and *Helvering v. Horst*, 311 U.S. 112 (1940). In the instant case, as in *Cotnam*, the value of taxpayer's lawsuit was entirely speculative and dependent on the services of counsel. The claim simply amounted to an intangible, contingent expectancy. The only economic benefit Clarks could derive from his claim against the defendant in state court was to use the contingent part of it to help him collect the remainder. Like an interest in a partnership agreement or joint venture, Clarks contracted for services and assigned his lawyer a one-third interest in the venture in order that he might have a chance to recover the remaining two-thirds. Just as in *Cotnam*, the assignment Clarks' lawyer received operated as a lien on a portion of the judgment sought to be recovered transferring ownership of that portion of the judgment to the attorney.

In *Lucas* and *Horst*, the income assigned to the assignee was already earned, vested and relatively certain to be paid to the assignor. It was a gift of accrued income to a family member. The assignor's purpose was to split income with a family member and avoid the donor's higher rate under the progressive income tax. The income had a tangible known value to the assignor. The assignee performed no services in order to receive the income. There was no business purpose other than tax avoidance. There was no joint venture to reduce a speculative claim to money. Not so in this case. Here there was no res, no fund, no proceeds, no vested

appeal is whether the $1,901,314.67 in interest paid to the lawyer must be included as gross income of the decedent under § 61(a) of the tax code ("gross income means all income from whatever source derived"), as well as included in the lawyer's income. The estate did not include the interest portion of the attorney fee award as interest income because the estate did not receive any of the money. It was paid directly to the lawyer.

In November 1992, the IRS conducted an audit of Clarks' 1991 tax return. It notified the decedent's estate that it had a tax deficiency of $254,298 because the estate improperly failed to include as income the interest paid to the lawyer on the contingent fee contract and because the interest should be deducted as a miscellaneous itemized deduction subject to a two percent of adjusted gross income limitation. *See* 26 U.S.C. §§ 61(a), 67(a). As a result of the two percent floor on itemized deductions under Code § 67(a) ("miscellaneous itemized deductions... allowed only to the extent that the aggregate of such deductions exceeds 2 percent of adjusted gross income") and the alternative minimum tax applicable to interest income under Code § 55, the estate had to pay the additional $254,298 in taxes owed, plus interest. The estate filed an action in federal district court seeking a refund of all tax and interest paid on the interest portion of the damage award for the 1991 tax year. At no time has the non-interest portion of the award ($5,600,000) been at issue since it is clearly not taxable as income pursuant to 26 U.S.C. § 104(a)(2). Neither is there an issue before us concerning the taxation of the income in the hands of the lawyer. Both parties filed cross motions for summary judgment. The district court granted summary judgment for the government and against the taxpayer. We do not agree.

*    *    *

There is a conflict in the Circuits on the issue of whether the interest portion of an attorney's contingency fee should be included in the client's income under Code § 61(a), even though the lawyer received and paid taxes on all of the money

and the client received none of the money. Compare *Cotnam v. Comm'r*, 263 F.2d 119 (5th Cir. 1959), with *Baylin v. United States*, 43 F.3d 1451 (Fed. Cir. 1995). *Cotnam* was the first to address the issue. In a 2-1 decision, the old Fifth Circuit held that the amount of the contingent fee paid out of the judgment to plaintiff's attorneys was not income to plaintiff. *See Cotnam*, 263 F.2d at 126. Under Alabama state law, a contingency fee contract operates as a lien on the recovery. The Alabama code provided at the time that "attorneys at law shall have the same right and power over said suits, judgments and decrees, to enforce their liens, as their clients had or may have for the amount due thereon to them." 46 ALA. CODE § 64 (1940). The *Cotnam* court found that this lien operated as a transfer of part of plaintiff's claim and that any recovery as to that portion of the claim would not be regarded as gross income to the plaintiff taxpayer. *Cotnam*, 263 F.2d at 125. The court concluded that the amount of the contingent fee was earned by the attorney, not the taxpayer, whose only real economic benefit from the claim amounted to a percent of the total judgment he received due to the lawyer's efforts. *See id.* at 126.

The common law lien in this case under Michigan law operates in more or less the same way as the Alabama lien in *Cotnam*. RAY ANDREWS BROWN, THE LAW OF PERSONAL PROPERTY § 116, at 559 (2d ed. 1955), describes a common law attorney's lien as follows:

> According to Mr. Justice Earl, of the New York Court of Appeals, "the lien, as thus established, is not strictly like any other lien known to the law, because it may exist although the attorney has not and cannot, in any proper senses, have possession of the judgment recovered. It is a peculiar lien, to be enforced by peculiar methods. It was a device invented by the courts for the protection of attorneys against the knavery of their clients, by disabling clients from receiving the fruits of recoveries without paying for the valuable services by which the recoveries were obtained. The lien was never enforced like other liens. If the fund recovered was in possession or under

> the control of the court, it would not allow the client to obtain it until he had paid his attorney, and in administering the fund it would see that the attorney was protected. If the thing recovered was in a judgment, and notice of the attorney's claim had been given, the court would not allow the judgment to be paid to the prejudice of the attorney." [Quoting *Goodrich v. McDonald*, 112 N.Y. 157, 19 N.E. 649 (1889)].

Although the underlying claim for personal injury was originally owned by the client, the client lost his right to receive payment for the lawyer's portion of the judgment. Michigan law is not inconsistent with this view of the attorney's lien, *Dreiband v. Candler*, 166 Mich. 49, 131 N.W. 129 (1911), — holding that "the [contingent fee] agreement amounts to an assignment of a portion of the judgment sought to be recovered." *Id.* at 51, 131 N.W. at 129.

In a more recent decision, the Federal Circuit reached the opposite result. *Baylin* held that the contingent fee portion of settlement from a condemnation proceeding paid directly to the lawyer was income to the plaintiff taxpayer. *Baylin*, 43 F.3d at 1455. *Baylin* mentioned the Supreme Court's liberal interpretation of "gross income" and then found that although the plaintiff never had actual possession of the funds paid to the lawyer, plaintiff received the benefit of those funds in that they discharged an obligation of the plaintiff owed to the lawyer as a result of his work. *See Baylin*, 43 F.3d at 1454.

*Baylin* relied on two early Supreme Court tax cases interpreting § 61(a), *Lucas v. Earl*, 281 U.S. 111 (1930) and *Helvering v. Horst*, 311 U.S. 112 (1940). In *Lucas*, taxpayer Earl assigned one half his right to salary and fees earned by him to his wife in order to avoid paying taxes on the whole, *Lucas*, 281 U.S. at 113-14. In *Horst*, taxpayer Horst, the owner of negotiable bonds, detached from them negotiable interest coupons shortly before their due date and delivered them as a gift to his son who later that year collected interest on them. *Horst*, 311 U.S. at 114. Even though the proceeds were originally vested in the donors, since Lucas himself